## Tulloch *et al. versus* Worrall *et al.*

*Ejectment.*— *Tenancy in common.*—*Duration of possession by one heir, not ground for implying ouster of co-heirs.*

1. Where plaintiffs in ejectment claimed title as devisees of one who with his brothers and sisters had inherited the land from their mother to whom it was alleged to have descended : and who having taken possession held it for upwards of forty years : and the defendants claimed as devisees in remainder of the father, who surviving his wife for many years, and who, claiming the land as his own, had devised it to the devisor above mentioned for life with remainder to them : *Held*, that the mere acquiescence of the heirs of the mother in the long-continued possession of their brother would not bar their right to recover nor would it be such a recognition and treatment of the title as coming from the father, as to estop them from setting it up under their mother.

2. Hence it was error to submit the question to the jury, whether the parties, the heirs of the mother, had *treated* the property as having belonged to the father, the son entering and holding under his will : and instructing that if they did, it must still be so treated, and the plaintiffs, who were devisees of the son who by the will of the father had a life estate only in the land, could not recover.

3. The mere duration of possession by the son was held not a ground for presuming an ouster of his brothers and sisters as heirs of their mother, if title came through her ; and that where there was no evidence of some decisive and unequivocal act amounting to an ouster, it should not be implied from length of possession alone.

ERROR to the Common Pleas of *Delaware county.*

This was an action of ejectment by Gordon Tulloch and James Velotte against Frazer Worrall, Bryan Field and Mary his wife, in right of said Mary, Peter Worrall, and Jonah Worrall, to recover a tract of fourteen acres of land in Upper Providence township, Delaware county.

The plaintiffs alleged that the title to the land was formerly in Mary Worrall ; that on her death, Elias Worrall (a son of Mary and Peter Worrall) took possession of it, and that he acquired title to his brothers' and sisters' shares by virtue of the Statute of Limitations.

That Elias Worrall died in possession of the property, and by his will devised it to the plaintiffs, and that he was in possession for upwards of forty years previous to his death.

[Tulloch *et al. v.* Worrall *et al.*]

The defendants denied that the title ever was in Mary Worrall, and averred that it was in Peter Worrall, her husband. And that even if it was not, the heirs, including Elias, so regarded and treated it, and that it must, therefore, still be so regarded and treated. Peter was in possession for many years before his death, and died there, first making his will, whereby he devised the property to Elias Worrall for life, and on his death without children, to the grandchildren of the testator, who might then be living.

It was admitted by the parties that the defendants are the persons designated by the will to take on Elias's death, and the defendants contended that it was by virtue of this will that Elias entered into and held possession of the land during his life.

The plaintiffs gave in evidence the will of Susanna Trego, of Upper Providence, proved August 23d 1765, devising to her mother, Ann Trego, and her heirs, all her lands and rights of lands in Upper Providence or elsewhere, descended to her from her father or otherwise, and the will of Ann Trego, of Upper Providence, proved February 26th 1771, bequeathing to her daughter, Mary Worrall, all the residue of her estate, to be put at interest for her use.

The evidence to prove that the property was owned by Mary Worrall, consisted of the wills referred to, and the statements and declarations of Peter Worrall made to, and in pursuance of his wife, while they lived together on the land. He was hauling manure from this property to his Sandy Bank place, when she forbade him, and he asked her to make the property over to him, which she refused, saying, if she did so, he would soon sell it. Her place required the manure as much as his. He used to scold at her about her saying she would not make it over, and he would make offers at her with his cane. He was never heard to claim the land as his own, or to assert that he owned it, when she claimed it. She said in Peter's presence that the property was hers, and she intended to keep it. On one occasion, at Sandy Bank, Elias asked Peter to fix up that place for him, and Peter told him to go to his mother's place and fix up a shop there. In the presence of Peter, Mary stated that the property came to her from her parents, and belonged to her, and he did not deny it.

The court below, after stating the main facts of the case, charged the jury " that where a party relies upon evidence of this character (admissions or declarations) to establish title in himself, or to defeat an apparent title in another, the admissions or declarations, to be of value, should be unequivocal, leaving no room for doubt as to what was intended, and should be proven to the entire satisfaction of the jury. If Peter Worrall, while in possession of the land, declared or admitted, distinctly and

[Tulloch *et al. v.* Worrall *et al.*]

unequivocally, that it was the property of his wife, this would be evidence of title in her. You will carefully examine the evidence and say whether it shows that such admissions or declarations were made by Peter Worrall, and whether the title to the land was in his wife.

"If you do not find the title to have been in her, the plaintiffs must fail in their suit.

"As I have already stated, the defendants contend that the title never was in Mary Worrall, but in Peter Worrall, her husband. And that even if it was not in Peter, the heirs so regarded it; that Elias entered and held under Peter's will, and that the plaintiffs cannot, therefore, set up a different title. Now, if the title was in Peter, as I have already said, the plaintiffs cannot recover—they stand on a supposed title in his wife. You have observed that Peter was in possession of the land for many years before his death—a greater length of time, according to the statements of the witnesses, than is required to confer title by possession, where the holding is adverse; that he died there, making a will, whereby he devised the land to his descendants, first to Elias, and after him to others. Now, in the absence of the declarations and admissions imputed to him by the plaintiffs—that is, if he did not make such declarations or admissions against himself (and that question I have submitted to you),— here is sufficient evidence of title in Peter.

"[But even though the title was not in Peter, and was in Mary, yet if the heirs treated it as having been in Peter, and Elias entered under his will, he, Elias, could not thereafter set up a title in Mary, nor can the plaintiffs who come after him.] You have seen that Elias went into possession of the whole tract and occupied it alone during his life. If it had come from the mother, he had not a right to do this, for his brothers and sisters, co-heirs of the mother, were equally entitled to the enjoyment of her estate; while if it were regarded as coming from the father, he had such a right conferred upon him by the will. [Then, did he enter and hold under this will? Did the parties, even though the land did not belong to the father, suppose it did, and treat it accordingly?] You have heard the comments of counsel on the one side and on the other in regard to this, in regard to the presumptions and probabilities arising from the evidence, in relation to it. [I repeat, if the land was so considered and treated, and Elias entered under the will of his father, it must still be so treated, and in such case the plaintiffs cannot recover.]

"On the other hand, if the title was in the mother, Mary Worrall, and you do not find it to have been treated by the heirs as having been in the father, Peter Worrall, then the plaintiffs will be entitled to recover; but how much they will be entitled

[*Tulloch et al. v.* Worrall *et al.*]

to recover—whether the entire tract or only a part of it—will depend upon how you shall find another question, which I will now state. Mary Worrall, as we have seen, had other children besides Elias; and if this land belonged to her, it descended on her death not to Elias alone, but to him and his brothers and sisters in equal parts. In such event, if the case rested here, the plaintiffs, as I have just stated, would be entitled to recover, but they could only recover the share of Elias, as one of the heirs of the mother—which is admitted to be the one-seventh. The plaintiffs contend, however, as we have already seen, that Elias became possessed of the shares of his brothers and sisters, by virtue of the Statute of Limitations. Ordinarily, where one enters upon land and holds it as men hold their own, for twenty-one years, his possession will give him title, by virtue of the statute referred to. Such holding is regarded as adverse and hostile, and the lapse of twenty-one years, without interference by the rightful owner, will operate to bar his title. The rule is not so, however, where the question arises between tenants in common. The possession of one of several such tenants is the possession of all; he enters and holds not for himself alone, but for himself and his fellows. [To bar the rights of the co-tenants under the statute, there must be something more than holding alone, and receiving the rents and profits, for such holding, without more appearing, cannot be regarded as adverse. There must be some denial, by word or deed, of the rights of the co-tenants, such as a refusal to account on demand, a refusal to permit them to enter, offering the property for sale or rent as his own, or some other act plainly evincing that he holds in hostility to their rights. In other words, there must be an ouster of the co-tenants, that is, dispossession or ejection of them from the premises.] Where, however, a co-tenant in common holds the possession for twenty-one years or upwards, undisturbed, claiming the land as his own (which claim may be evinced in the manner just indicated, by denial of the rights of the co-tenants, or offering the property for sale or rent as his own), the law presumes an ouster to have taken place, and this presumption is binding upon the jury. Where nothing further appears than the long possession, and the exclusive receipt of the rents and profits, the law does not presume such ouster. If, however, in such a case, from the great lapse of time, and attending circumstances, or from the lapse of time alone, the jury considers it reasonable to believe that an ouster has actually taken place, it may and should so find, and in such case the statute will operate to bar the rights of the co-tenants, after the expiration of the period of twenty-one years from such ouster.

"If, then, you find the title of this land to have been in Mary Worrall, so that on her death it descended to Elias and his

[Tulloch *et al. v.* Worrall *et al.*]

brothers and sisters, and do not find that it was regarded and treated as coming from Peter Worrall, you must inquire and determine whether Elias obtained title to the shares of his brothers and sisters by virtue of the Statute of Limitations, in the manner I have indicated. Did he take possession, without reference or regard to the father's will, and hold in hostility, adversely, to his brothers and sisters, claiming the property as his own exclusively? If he did, the plaintiffs will be entitled to recover the entire tract.

" You thus observe the case presents three questions for your consideration:

" 1st. Did the land belong to Mary Worrall? If it did not, you need go no further, the plaintiff in such case cannot recover. If you find it did belong to her, then the second question arises, to wit:

" 2d. Did the parties, notwithstanding, treat the property as having belonged to Peter Worrall, Elias entering and holding under his will? If they did, then it must still be so treated, and the plaintiffs cannot recover.

" But if the land belonged to Mary Worrall, and was not treated by the heirs as having belonged to Peter, then the plaintiffs are entitled to recover. But how much? And thus the third question arises, to wit:

" 3d. Did Elias acquire title by virtue of the Statute of Limitations, to the shares of his brothers and sisters? If he did not, then the plaintiffs (in this view of the case, that is, that the land came from the mother, and was not treated as coming from the father) are entitled to recover the share of Elias, the one-seventh. If he did so acquire title to the shares of his brothers and sisters, then the plaintiffs are entitled to recover the whole tract."

Under these instructions there was a verdict and judgment in favour of the defendants. Whereupon the plaintiffs sued out this writ, and averred that the court below erred in so much of the charge as is printed above in brackets.

*William Darlington,* for plaintiffs, argued—1. That there was no evidence in the cause that Elias entered into possession of the land under his father's will. The only evidence on the subject is from defendants' witnesses, that Elias lived with his father on the place, and continued to live there after his father's death, until he himself died in 1862. In the absence of evidence upon that point, the law presumes him to have entered in pursuance of his title; and when, as here, a question is made whether he entered as tenant for life or tenant in fee? the law presumes him to have entered under that which is most to his interest. The court erred, therefore, in submitting that question to the jury

[Tulloch *et al. v.* Worrall *et al.*]

without any evidence. Nor was there any evidence in the cause that the heirs "treated" the title as having been in Peter, or that the parties "supposed" it did, or "considered or treated" it so. We look in vain for any evidence upon that point. But if there were the most ample evidence on the subject, how can the "supposition," "consideration," or "treatment" of others affect Elias's title to the land? Thus if the jury found that the land had belonged to Mary, they were left at liberty to decide that if "others" treated it as Peter's it was Peter's, and plaintiffs could not recover. These questions were submitted without evidence, and the jury left without proper guidance.

2. That it was not necessary for one tenant in common to maintain title by virtue of the Statute of Limitations against his co-tenant, that actual ouster should be shown. If he enters on the whole and takes the profits, and claims the whole exclusively for twenty-one years, the jury ought to presume an actual ouster, though none be proved: Frederick *v.* Gray, 10 S. & R. 182. He need not give notice of his adverse intent: Lodge *v.* Patterson, 3 Watts 77. Nor make any express declaration to that effect: Law *v.* Patterson, 1 W. & S. 191. If he enter upon the whole land, take possession as if it were his own exclusively, receive the whole rents without accounting for any part of them, or any demand being made upon him to do so, or any acknowledgment by him of the claim of his co-tenant, it is sufficient: Id. In this case Elias had exclusive possession for forty years, without accounting to any one, or any demand being made on him to do so, occupying and using the land as his own, and disposing of it by will at his death. All the requirements of the law existed in his case. The court erred in saying there must be a refusal to account on demand, or to permit them to enter, or offering the property for sale or rent, to constitute title by limitation.

*William Ward,* for defendants.—1. As devisee in tail of the father, Elias was entitled to the entire lands, while as heir of the mother he took but one-seventh. The fact that he took possession of the entire lands, made no effort to part them with his brothers and sisters, or to account to them for the rents and profits, is evidence for the jury that he did so under the only claim of right he had. He is not to be presumed to be a wrongdoer when he had a right to do what he did, at least with the acquiescence of his co-heirs and devisees of his father.

It is well settled that a husband devising lands of his own, and other lands of his wife, to their common children who accept the provisions of the will, makes the wife's lands his for the purposes of the will, and no child who takes under the will can gainsay it. If the land belonged to the mother, Elias could take under the will of the father as against every one who also took under that

[Tulloch *et al. v.* Worrall *et al.*]

will. He could take the six-sevenths only under the will. He did take the six-sevenths. He and those claiming under him are therefore bound by the will. The court might have gone further —might have instructed the jury that there is conclusive evidence that Elias took possession under the will of his father.

The plaintiffs' counsel argues with some force that Elias is to be presumed " to have entered under the title which was most to his interest;" but he is in error in stating the contrasted interests. Under his father, Elias took a fee tail in the entire lands, which, if he had so chosen, was equal to a fee simple; for he might have barred the entail, while as heir of his mother he could have taken but one-seventh. His interest, therefore, was to take under the will.

2. The plaintiffs complain that the court below charged in effect that some act or declaration beyond the mere taking possession is necessary to constitute ouster of a co-tenant. This is undoubtedly sound law; but if it were not, it is difficult to see how the plaintiffs are aggrieved. The jury found for the defendants for the entire lands, so that the question of ouster did not affect the result. If the jury had found for the plaintiffs for one-seventh, then a misdirection on the question of ouster would have been material. To find as they did, the jury must have held either that the land was Peter's, or, if not, that Elias took possession under the will of Peter, and in neither case could the question of ouster enter into their deliberations.

The opinion of the court was delivered, February 6th 1865, by Woodward, C. J.—In the lifetime of Peter Worrall and Mary his wife, the title to the land in controversy was vested either in him or in her. If in him, it passed by his devise to their son Elias for life, with remainder to the defendants in this suit, but if in her, it descended at her death (which preceded by some twenty years that of her husband), to her seven children, of whom Elias was one, subject to the curtesy of her surviving husband, and Elias's interest, whatever it was, passed by *his* will to the plaintiffs on record.

The main question in the cause was well put by the court below, " Did the land belong to Mary Worrall ? If it did not, the plaintiffs cannot recover." But if it did, then some other questions were supposed to arise which have proved not a little embarrassing to us. The learned judge, founding himself upon the supposition of title in Mary Worrall, put to the jury, " did the parties notwithstanding treat the property as having belonged to Peter Worrall, Elias entering and holding under his will? If they did, then it must still be so treated, and the plaintiffs cannot recover."

Now it is denied that there was any evidence that the heirs of

[Tulloch *et al. v.* Worrall *et al.*]

Mrs. Worrall (and it is presumed they were "the parties" alluded to) ever treated the property as having belonged to her husband, and in the evidence sent up we see no proof upon the subject, except what may be inferred from the long acquiescence of the heirs in Elias's possession. What was the effect of their acquiescence?

Elias Worrall, in possession for more than forty years, would be presumed to be holding under the will of his father, upon the general principle which refers every man's possession to the written title he places upon record, but Elias negatived this presumption by making his will for the land. Under his father's will he had only a life estate without any testamentary power, and yet when he came to die he made his own will, as if he was tenant in fee. He may have supposed, very innocently, that his long possession had given him a title, as against those in remainder, and we see not how else to interpret his conduct consistently with the theory that he was holding under his father's will. But whatever his views of his title may have been, the question is, did the acquiescence of the co-heirs of Elias in his possession bar their rights? This is not a question upon the Statute of Limitations—that subject will be considered hereafter—but it is whether that acquiescence was such recognition and treatment of the title, as coming from Peter Worrall, as to estop them from setting up title under Mary Worrall. And we cannot think it was. The Mary Worrall title could not be divested and transferred to another branch of the family by such treatment. Elias, if he acquired title by virtue of his possession, obtained it under the Statute of Limitations, and not by such equivocal means as the court called *treating* it as Peter Worrall's land.

And this brings us to the Statute of Limitations. On the supposition of title originally in Mary Worrall, and supposing it not treated as belonging to Peter, the court said the plaintiffs could recover. But how much? This was made to depend upon whether Elias had obtained title by virtue of his possession under the Statute of Limitations. If he had, the plaintiffs could recover the whole, if he had not, they could recover but a seventh.

Upon this part of the case we observe that if Elias was in as an heir of his mother, he was holding for himself and co-heirs, and the longer his possession the better their title. Where one of several heirs enters or remains in possession of land at the death of the ancestor, the law presumes that he entered, not to abate the shares of his brothers and sisters, but to preserve them for their use, and his entry being consequently theirs, no mere lapse of time will countervail the presumption and give him title in severalty. There must be something more—some plain, decisive, and unequivocal act—to amount to an ouster: Phillips *v.*

[*Tulloch et al. v.* Worrall *et al.*]

Gregg, 10 Wright 158; Hart *v.* Gregg, Id. 185; Watson *v.* Gregg, Id. 289; Graffius *v.* Tottenham, 1 W. & S. 492.

In the cases in which one tenant in common has successfully asserted the statute against his co-tenants, there have been un-equivocal acts—such as resistance of the right of entry; confession of disseisin; selling, leasing, or improving the premises, or part of them; something more than mere perception of profits and payment of taxes. Yet the court, in this instance, put to the jury mere duration of possession as ground for presuming an ouster. In this respect the charge, which for the most part set forth the law on this subject correctly, was, we think, exceptionable. In the evidence, as furnished to us, we see not a single fact, except length of possession, to imply an ouster, and if the jury believe that Elias entered as heir of his mother, we think an ouster should not be implied from that solitary fact, and that the utmost Elias could devise was his undivided seventh part.

The case seems likely to depend essentially upon the question whether the property came from the father or mother of Elias. The evidence on that point was properly referred to the jury, and if the jury believed it came from the father the verdict was right; but with proper instructions on the other parts of the case, it is possible the verdict might have been the other way, and therefore

> The judgment is reversed, and a *venire facias de novo* is awarded.