# Cannon *v.* Jackson, Appellant.

*Ejectment—Tenants in common—Possession by one cotenant—Adverse possession—Case for jury.*

1. Possession by one cotenant is presumed to be for the benefit of both, and the question whether the possession of one is adverse and amounts to an ouster of the other is usually for the jury to determine from the circumstances of the case. The burden is on the cotenant in possession to show by clear and positive proof the time and circumstances under which his possession began to be adverse and that such adverse possession was brought to the knowledge of his cotenant.

2. The open, notorious and uninterrupted possession of the whole property by one tenant in common for twenty-one years, claiming the whole land as his own, and taking the whole profits exclusively to himself, is evidence from which a jury may draw the conclusion of an ouster, but does not afford a legal presumption of ouster; the question whether the fiduciary character of the relation has been determined by a decisive act, or by a course of conduct bring-

ing home notice, to the party to be affected by it, of the change of the character of the posssession, is for the jury.

3. In an action of ejectment to recover an undivided half interest in a farm, which plaintiff claimed as the illegitimate child of a woman who had been cotenant thereof, defendant offered a deed for the entire tract from the other cotenant, a sister of the woman under whom plaintiff claimed and who had been in possession for twenty-three years; defendant alleged that his grantor had acquired title by adverse possession. It appeared that defendant's grantor had been the administratrix of her sister's estate, and it did not appear that she had expressly denied plaintiff's interest in the property. It further appeared that plaintiff had resided with defendant's grantor on the farm until her marriage; she had admitted, in a deposition taken for use in another proceeding, that defendant's grantor was the sole surviving member of the family, but explained that she made this statement at the request of defendant's grantor and in order to conceal her illegitimate birth. *Held,* that the case was for the jury, and a verdict for plaintiff was sustained.

Argued Oct. 26, 1915. Appeal, No. 166, Oct. T., 1915, by defendant, from judgment of C. P. Allegheny Co., July T., 1913, No. 1514, on verdict for plaintiff in case of Alice Carey Jackson Cannon v. Robert George Jackson. Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ. Affirmed.

Ejectment to recover an undivided half interest in a farm situated in the 14th ward of the City of Pittsburgh. Before MACFARLANE, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff and judgment thereon. Defendant appealed.

*Error assigned,* among others, was in overruling defendant's motion for judgment n. o. v.

Thomas Patterson, of Patterson, Crawford, Miller & Arensberg, with him John E. McCalmont and John W. Chalfant, for appellant.—Plaintiff's testimony showing

a complete ouster there can be no recovery although other witnesses have testified differently: Acklin v. McCalmont Oil Company, 201 Pa. 257; Kohler v. Penna. R. R. Co., 135 Pa. 346.

The exclusive and uninterrupted possession of defendant's predecessor in title for more than twenty-one years constituted a complete ouster of the plaintiff and no question of fact is involved: Susquehanna Coal Co. v. Quick, 61 Pa. 328; Johns v. Johns, 244 Pa. 48; O'Boyle v. Kelly, 249 Pa. 13; Miller v. Miller, 60 Pa. 16.

*John M. Freeman,* of *Watson & Freeman,* with him *Gilbert F. Zehner, Ernest C. Irwin, H. F. Stambaugh* and *Francis R. Harbison,* for appellee.—In cases of tenancy in common the statute of limitations will not run until an ouster is proven by clear and positive evidence, and express notice of the ouster is brought home to the other tenant: Johns v. Johns, 244 Pa. 48; O'Boyle v. Kelly, 249 Pa. 13; DeHaven v. Landell, 31 Pa. 120; Forward v. Deetz, 32 Pa. 69; Hall v. Mathias, 4 W. & S. 331; Tulloch v. Worrall, 49 Pa. 133.

Denial of the cotenant's title is necessary in both ouster and adverse possession: Lodge v. Patterson, 3 Watts 74; Pierce v. Barney, 209 Pa. 132; and the intent inferable from the conduct of the adverse claimant is a question for the jury: Scottish Rite, &c., Assn. v. Union Trust Co., 195 Pa. 45; Perkiomen R. R. Co. v. Kremer, 218 Pa. 641; Hood v. Hood, 2 Grant. 237; Tulloch v. Worrall, 49 Pa. 133; Kirby v. Kirby, 236 Ill. 265; McCafferty v. Penna. R. R. Co., 193 Pa. 339.

Whenever there is sufficient evidence to support a finding, however conclusive the evidence may be, the questions of ouster and adverse possession are for the jury: Johns v. Johns, 244 Pa. 48; Hillside Coal & Iron Co. v. Zeigler, 218 Pa. 319; Lackawanna Lumber Co. v. Kelly, 221 Pa. 238; Sayers v. Pollock, 219 Pa. 274.

Admission of exclusive possession in either cotenant is not an admission of adverse possession or of an ouster:

Bolton v. Hamilton, 2 W. & S. 294; Carey v. Schaller, 16 Pa. Superior Ct. 350.

Plaintiff's deposition in a judicial proceeding in 1896 was not an admission either of ouster or adverse possession prior to May 28, 1892; its effect was for the jury to determine: Floyd v. Kulp Lumber Co., 222 Pa. 257; Commonwealth v. Monongahela Bridge Co., 216 Pa. 108.

The failure of plaintiff's cotenant to comply with her promise to take care of plaintiff by her will was such a deception as would estop her heirs from claiming title under the statute of limitations: Sailor v. Hertzogg, 2 Pa. 182; Parker v. Salmon, 101 Ga. 160; Davis v. Monroe, 187 Pa. 212; Armstrong v. Levan, 109 Pa. 177.

The possession of one cotenant and her receipt of the income from the land and payment of taxes thereon, are not conclusive of the other cotenant's rights: Enterprise Oil & Gas Co. v. National Transit Co., 172 Pa. 421; Vail v. Strong, 10 Vt. 457; Royal Insurance Co. v. Beatty, 119 Pa. 6.

OPINION BY MR. JUSTICE FRAZER, January 3, 1916:

Plaintiff, Alice Carey Jackson Cannon, a widow, brought this action of ejectment to recover an undivided half interest in a farm known as the Jackson Homestead, claiming to inherit as the illegitimate daughter of Mary Jackson, deceased daughter of George Jackson, the latter having died in 1854, leaving surviving him a widow, who died in 1874, a son, who died in 1886, and two daughters, Mary, or Mollie, who died in 1889, and Sarah, who died in 1912. Defendant claims the property under the will of Sarah, then Mrs. Black, the sole surviving daughter of George Jackson, and denies that plaintiff is the daughter of Mrs. Black's sister, Mary. This question was admittedly one for the jury, who found in favor of the plaintiff. There being no complaint as to the manner of submitting that question, the only remaining defense was claim of title by adverse possession for more than twenty-one years. The jury also found in favor of

plaintiff on this question, and the point to be determined here is whether the court should have taken the case from the jury and held as matter of law that defendant's title by adverse possession was fully established.

Plaintiff was born in 1860 or 1861. During her early childhood she resided on the homestead property with Mary and George Jackson and their mother. Plaintiff was taken care of by Mary Jackson. She was called Alice Black, from Mr. and Mrs. Black, who were her foster parents and came to reside on the farm with the others when plaintiff was eight or nine years old. She testified she did not know Mrs. Black was not her mother until she was about seven years old, when she was informed by a man who lived with the family, and did not know that Mary Jackson was her mother until 1876, when she was sixteen years old. At that time she became a member of the church and Mr. Black insisted that she use the name of Jackson, and when she returned from church Mrs. Black told her she was a devil and a hypocrite and if people knew her they would not have her in the church. When Mrs. Black left the room Mary Jackson informed plaintiff of her real parentage and cautioned her not to tell unless she found Sarah was "going to do her out of her rights." A short time thereafter, in 1878, plaintiff married Richard Cannon and no longer lived on the homestead. At the death of Mary Jackson in 1889, Mrs. Black took out letters of administration, paid the collateral inheritance tax as "heir," and subsequently continued in possession of the property, paid the taxes, etc., and received the income therefrom until the time of her death, in 1912, when she left a will devising her estate to defendant. Plaintiff then started this action of ejectment to recover an undivided half of the property, claiming that interest by virtue of inheritance through her mother, Mary Jackson. The precise question, therefore, is whether under the circumstances the possession by Mrs. Black for a period of over twenty-one years was so open and adverse and showed so clearly an

ouster of plaintiff as tenant in common to warrant binding instructions for defendant.

The possession of one tenant in common does not necessarily amount to adverse possession as against a cotenant. Prima facie such possession is presumed to be for the benefit of both, and the question whether the possession of one is adverse and amounts to an ouster of the other is usually one for the jury to determine from the circumstances of the case. The original entry of the one tenant in common not being adverse, every presumption is in favor of the continuance of such possession in subordination to the title of the other, and the burden is on him to show by clear and positive proof the time and circumstances under which his possession began to be adverse and that such adverse possession was brought to the knowledge of his cotenant: Johns v. Johns, 244 Pa. 48. In Susquehanna & Wyoming Val. R. R. & Coal Co. v. Quick, 61 Pa. 328, it is said by AGNEW, J., (p. 341): "Every case must be judged of by its facts. It is therefore certainly the law that open, notorious and uninterrupted possession of the whole by a tenant in common for twenty-one years, claiming the whole land as his own, and taking the whole profits exclusively to himself, is evidence from which a jury may draw the conclusion of an ouster and an adverse possession. The distinction is that it does not afford a legal presumption, which would entitle the court to withdraw the question from the jury, and instruct them that they must infer an ouster, but it constitutes a natural presumption, or is competent evidence, from which the jury may infer an ouster and adverse possession, if not successfully rebutted. But the question of fact must be determined by the jury, for it may appear from all the circumstances that the possession is not adverse, notwithstanding the long continued reception of the profits. Every case depends on its own circumstances, as to the strength of the conviction it produces, and hence it must be left to the jury, under a proper instruction, to determine whether the fiduciary

character of the relation has been determined by a decisive act, or by a course of conduct bringing home notice, to the party to be affected by it, of the change in the character of the possession......Yet in all cases the rule is the same, to-wit: that the relation must appear to have been severed by such positive acts, or continued conduct, as tend to bring home notice, to the party to be affected, of the change in the relation, and that the possession is adverse to him."

Applying the above principles to the case before us, the question whether there was an ouster of plaintiff and the title in Mrs. Black by adverse possession was clearly one for the jury. The tenancy in common began at the time of the death of Mary Jackson in 1889. Demand was made by plaintiff after the death of Mrs. Black in 1912, and the summons in ejectment served on defendant on May 29, 1913. It was incumbent on defendant, therefore, to prove an ouster occurring between the death of Mary Jackson in 1889 and May 29, 1892, which was twenty-one years prior to instituting these ejectment proceedings. It will be remembered that Mrs. Black had taken out letters of administration on the estate of Mary Jackson and continued in charge and management of the property in the same manner as before the death of Mary. It does not appear that Mrs. Black ever expressly denied plaintiff's interest in the property. It does appear plaintiff never made claim to any part of the property until after Mrs. Black's death; nor did she claim the products of the farm or the rents received therefrom. In 1896 plaintiff, in a deposition taken on behalf of Mrs. Black for use in presenting the latter's claim to property in England, stated that Mrs. Black was the sole surviving member of the Jackson family, and that there were two properties, the one in dispute, and a certain other property belonging to the estate, to which Mrs. Black had title. In explanation, plaintiff refers to the request of her mother not to mention their relationship unless Mrs. Black tried to take away from her any of her rights.

The desire to conceal the fact of her illegitimate birth was a natural one. Plaintiff further states Mrs. Black promised to provide well for her in her will, and she therefore believed when Mrs. Black died she would receive the property she was entitled to. It appears Mrs. Black was in the habit of abusing plaintiff and treated her as a servant, and in the present case plaintiff testified that in the depositions offered in evidence she said just what Mrs. Black told her to say. All these matters have a bearing on the question whether plaintiff's failure to act sooner was an acquiescence in defendant's possession of the property under claim of ownership.

In view of the relation between plaintiff and Mrs. Black, the effect of plaintiff's admissions in the depositions is for the jury and cannot be construed to estop her from setting up her claim of title in this action. Defendant was bound to prove an ouster prior to May 29, 1892, and a continuance thereof for the period of twenty-one years which elapsed prior to the date of the suit. There is no such evidence of ouster as would warrant us in saying as matter of law that defendant was entitled to judgment.

While it is necessary for plaintiff to show Mrs. Black knew of the former's claim of half of the property as the daughter of Mary Jackson before the latter can be presumed to have held for plaintiff's benefit, there is ample evidence of this fact to warrant submission of this question to the jury. There is evidence that Mrs. Black frequently, in the presence of Mary, asked plaintiff if she knew who her mother was, and admitted to witnesses that Mary was Alice's mother. This evidence, together with the other evidence heretofore referred to, was sufficient to go to the jury on the question whether Mrs. Black knew plaintiff was the daughter of her sister and therefore a part owner of the property.

Judgment is affirmed.