Hanley, Appellant, v. Stewart et al.

536

Argued April 12, 1944.   Before KELLER, P. J., BALD-
RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Stuart A. Culbertson,* with him *J. Perry Eckels,* for appellant.

*Gerald D. Prather,* with him *Kent & Kent,* for appellee.

OPINION BY KELLER, P. J., September 27, 1944:

The plaintiff, Florence Sullivan Hanley, claiming to be the owner of a one-sixteenth interest in a farm of 160 acres, known as the William Hawk farm, situate in Greenwood Township, Crawford County, Pennsylvania, on June 29, 1942 filed this bill in equity against her co-tenants asking for a partition of said real estate.

She averred in her bill that Cornelius Sullivan, her grandfather, died intestate in April, 1891, seized of the said real estate.

Ann Arndt, who, as sole devisee of Ella Sullivan, a daughter of said Cornelius Sullivan, was admitted by the plaintiff to be the owner of one-fourth of said real estate, but who, as sole devisee of Ella Sullivan, claimed ownership of the whole farm in the right of said Ella Sullivan, by virtue of the latter's alleged adverse possession of the farm for more than twenty-one years, in her answer[1] did not deny the foregoing averment in the bill, but contented herself with pleading lack of knowledge, and stating, "if the same became material, she demands strict proof of the same." This was not a sufficient denial of the averment in the bill and operated as an admission of the fact averred: *Cameron v. Carnegie Trust Co.,* 292 Pa. 114, 118, 119, 140 A. 768.

The evidence established that Cornelius Sullivan left

---

[1] She was the only defendant who made answer, and she denied the plaintiff's right to a partition of said real estate.

to survive him a widow, since deceased, and four children, as follows: (1) a daughter, Mary, who married one Stewart, and who is living; (2) a daughter, Ella, who died unmarried on August 6, 1941, having left a will, duly admitted to probate, by which she left all her estate, real and personal, to the defendant, Ann Arndt; (3) a son, John, who died intestate on August 10, 1933, leaving to survive him a widow, Mary Tobin Sullivan, and four children, Florence Sullivan Hanley, the plaintiff, Anna Sullivan Mahoney, John Bernard Sullivan, and Ethel Sullivan McNamara; (4) a son, Dennis Sullivan, who died intestate April 23, 1937, leaving to survive him a son, Cornelius.

The said Ann Arndt, who was the only defendant who appeared and opposed the plaintiff's right to a partition of the real estate, set up a claim to sole ownership of the land in question on two grounds:

(1) By right of adverse possession in her devisor, Ella Sullivan, under the Act of March 26, 1785, 2 Sm. L. 299, sec. 2.

(2) That the title of said Ella Sullivan to said real estate had been adjudicated in an action brought by her to No. 31 February Term, 1918, in said County.

She also alleged that the plaintiff's laches barred her right to ask for a partition of the real estate.

The court below, after a trial in court, dismissed the bill of complaint for three reasons:

(1) Because the plaintiff had not averred or proved ownership of the land *in fee simple* by Cornelius Sullivan at the time of his death, but only that he "died seized" of it, which amounted only—the learned court said—to an averment of simple possession, and not an averment of seisin or possession in his demesne as of fee, and hence did not aver a title that would pass to his heirs under the intestate laws; and, therefore, there was no competent proof that Ella Sullivan was a co-

tenant with the other heirs of Cornelius Sullivan; and hence the well-known rule that the possession of one co-tenant is the possession of all did not apply to this case.

(2) That the defendant, Ann Arndt, had sufficiently established title by adverse possession—limited as above set forth—in her devisor, Ella Sullivan.

(3) That the plaintiff was guilty of laches, barring her right to bring this suit.

We are of opinion that the court was wrong in all three of its grounds or conclusions.

(1) The defendant, Ann Arndt, had not in her answer set up the first ground relied on by the court. On the contrary she had acquiesced in the plaintiff's use of the word 'seized', as meaning, 'seized in fee simple', by using it in the same sense in her answer. In paragraph 14 of her answer she averred, "And further that the said Ella Sullivan died *seized* of the said premises by reason of actual, visible, hostile, open, notorious, exclusive, adverse and uninterrupted possession of said premises for a period of more than fifty (50) years." Where both parties use the word in the same sense, there is no reason or justification for the court, of its own motion, to go outside the record and decide the case on a point not raised in the pleadings or on the trial, and which, if it had been raised could probably have been determined by a reference to the deed to Cornelius Sullivan or by other evidence showing the nature of his tenure.

Furthermore there is substantial competent authority for the position that 'seized', used by itself, commonly refers to a possession in fee simple. We refer to the Oxford English Dictionary.

"**Seise.** *verb, Law.* The usual spelling of SEIZE. verb, in the sense: To put in possession, invest with the fee simple of. (See SEIZE V. 1, 2)." ....

"Seize. *verb*.

I. To put in possession

1. Law. ...

b. Passive, To be seised of or in: to be the legal possessor of ... ; to be the holder of the fee simple."

Among the illustrative citations given is:

"JARMAN—*Powell's Devises II. 103,* If a devisor being seized of both Blackacre and Whiteacre, devise Blackacre to A. in fee."

Unless he was *seized in fee* of Blackacre he could not *devise it in fee.*

In *Lucet et al. v. Beekman et al.,* 2 Caines' Reports 385 (1805) the Supreme Court of Adjudicature of New-York—comparable to the present Court of Appeals—said: "If a party named in a petition for partition be stated to be *seised* of a certain portion, the court will intend it to be of a fee."

President Judge RICE in the opening statement of his opinion in *Sanders's Est.,* 41 Pa. Superior Ct. 77, 79, an orphans' court partition proceeding, used the word, seized, in that sense when he said: "Elizabeth Sanders died intestate, *seized of land,* and leaving to survive her five children", etc.

See also, *South End Mining Co. v. Tinney,* 22 Nev. 19, 36, 35 Pac. 89, 94, where the word, 'seized', was construed as meaning 'seized in fee simple'.

(2) The main ground relied on by the court below having been found to be untenable, the second falls with it, for the court's disposition of this ground, viz., the finding that Ella Sullivan had established her ownership of the farm by adverse and uninterrupted possession for more than twenty-one years, was based on the premise deduced from the first ground, that Ella Sullivan was not a co-tenant of the land with her brothers and sisters, as co-heirs of Cornelius Sullivan,

the owner in fee simple at the time of his death in 1891.

The rule is established in this Commonwealth beyond peradventure that in order for an heir to obtain title by adverse possession as against his or her co-heirs and co-tenants, it is necessary to prove adverse possession (a) by an actual ouster of his or her co-heirs and co-tenants twenty-one or more years before, and uninterruptedly maintained, or (b) by positive and unequivocal acts, amounting to a claim of the whole property as *exclusively his or hers,* brought home to the co-heirs and co-tenants twenty-one or more years before, and likewise maintained without interruption. Otherwise the possession of one co-heir and co-tenant is rightly held to be the possession of all. "The possession of one tenant in common does not necessarily amount to adverse possession as against a co-tenant. Prima facie such possession is presumed to be for the benefit of both. ...... The original entry of the one tenant in common not being adverse, every presumption is in favor of the continuance of such possession in subordination to the title of the other, and the burden is on him to show by clear and positive proof the time and circumstances under which his possession began to be adverse and that such adverse possession was brought to the knowledge of his co-tenant": *Cannon v. Jackson,* 252 Pa. 257, 262, 97 A. 468.

The following additional citations taken from a much larger number support the rule: *Hart v. Gregg,* 10 W. 185, 189, 190; *Forward v. Deetz,* 32 Pa. 69, 73; *Susquehanna etc., Coal Co. v. Quick,* 61 Pa. 328, 341; *Rohrbach v. Sanders,* 212 Pa. 636, 641, 62 A. 27; *Johns v. Johns,* 244 Pa. 48, 54, 55, 90 A. 535; *Reap v. Dougher,* 261 Pa. 23, 25, 26, 103 A. 1014; *Hover v. Hills,* 273 Pa. 580, 584, 117 A. 346; *Carey v. Schaller,* 16 Pa. Superior Ct. 350, 353; *Sanders's Est.,* 41 Pa. Superior Ct. 77, 82; *Lamon v. Rodgers,* 42 Pa. Superior Ct. 437, 440.

One co-tenant does not acquire title by adverse possession as against his or her co-tenants by the receipt of all the crops, profits, etc.: *Morris v. Vanderen,* 1 Dallas 64, *Hart v. Gregg,* 10 W. 185; *Forward v. Deetz,* 32 Pa. 69, 73; *Lewitsky v. Sotoloff,* 224 Pa. 610, 612, 73 A. 936, *Rohrbach v. Sanders,* 212 Pa. 636, 62 A. 27; *Sanders's Est.,* 41 Pa. Superior Ct. 77, 80; *Lamon v. Rodgers,* 42 Pa. Superior Ct. 437, 440.

Nor by payment of the taxes on the whole property: *Sanders's Est.,* supra; *Lamon v. Rodgers,* supra; *Rohrbach v. Sanders,* supra.

Nor by repairs or improvements to the buildings: *Rohrbach v. Sanders,* supra; *Lamon v. Rodgers,* supra; *Huffman Est., (No. 1),* 349 Pa. 18, 36 A. 2d 638; *Velott v. Lewis,* 102 Pa. 326, 331, 333.[2]

---

[2] "The defendant presented, inter alia, the following point:—

3. If the plaintiffs claim that Elias took title from his mother, they must, in order to show title in him to the whole, first show title in the mother, and then show that Elias did some decisive act, or commenced a course of conduct more than twenty-one years prior to April 14, 1863, brought home to the knowledge or notice of his brothers and sisters, by which he ousted them from the possession, and must follow this up by showing a continued, visible, notorious, distinct, and hostile possession in him or those who claim under him, persisted in for twenty-one years. The mere keeping possession, leasing the property, receiving the rent, erecting fences and buildings adapted to its cultivation and profit would be no evidence of ouster.

Answer. The third point is affirmed. (Twelfth assignment of error)" ...... Mr. Justice Gordon, speaking for the Supreme Court, said: "The points covered by the tenth, eleventh and *twelfth* assignments, were well answered, since they are in accordance with the opinion of this court as found in the case of Tulloch v. Worrall, 13 Wr. 133 [49 Pa. 133]." *Velott v. Lewis,* supra, pp. 331, 333.

Furthermore, in the present case, the new buildings were erected and most of the extensive repairs were made after the cyclone of 1924 (44a), and only seventeen years had elapsed when Ella Sullivan died in 1941, and only eighteen years when this suit was brought in 1942.

The appellee has overlooked the importance of the qualifying words—italicized by us—used in the decisions relied on by her to the effect that "open, notorious and uninterrupted possession of the whole by a tenant in common for twenty-one years, *claiming the whole as his own,* and taking the whole profits exclusively to himself, is evidence from which a jury may draw the conclusion of an ouster and an adverse possession."[3] Unless the profits are taken *under such unequivocal exclusive claim to the whole,* brought home to the co-tenants twenty-one years or more before, the possession is not adverse as to his co-heirs and co-tenants: *Phillips v. Gregg,* 10 W. 158, 164, 167; *Reap v. Dougher,* 261 Pa. 23, 25, 26, 103 A. 1014; *Cannon v. Jackson,* 252 Pa. 257, 97 A. 468; *Johns v. Johns,* 244 Pa. 48, 90 A. 535.

An unmarried daughter, living with her parents, is frequently allowed by her co-heirs, after their father's or their parents', death, to remain in possession of the homestead, and receive the crops and profits, just as in the lifetime of their parents, without thereby surrendering or being deprived of their interest in the land; and until the daughter claims the whole as exclusively her own, and brings home notice of such claim to her co-heirs and co-tenants by some positive and unequivocal act or declaration to them her possession does not become adverse to them.

The character of acts necessary to bring home to one's co-tenants notice of one's claim to ownership of the whole, must be positive and unequivocal, and *similar*

---

[3] AGNEW, J., in *Susquehanna etc., Coal Co. v. Quick,* 61 Pa. 328, 341.

"For when one tenant in common enters on the whole, and takes the profits of the whole, and *claims the whole exclusively,* for 21 years, the jury ought to presume an actual ouster, though none be proved." TILGHMAN, C. J. in *Frederick v. Gray,* 10 S. & R. 182, 188 (Italicized by the Chief Justice).

in nature to where a grantor in a deed attempts to claim adverse possession against his grantee. See *Owens v. Peters,* 126 Pa. Superior Ct. 501, 504-5, 191 A. 399.

No such clear and positive proof of the time when and the circumstances under which Ella Sullivan's possession of the home place began to be adverse appears in this case. The evidence fails to show how long *Cornelius Sullivan's widow survived his death and continued to live on the farm with Ella.* Nor is there such clear, positive and unequivocal proof of when, if ever, and how, such adverse possession by her was brought to the knowledge of her co-heirs and co-tenants. Even including the testimony of Ann Arndt, who was incompetent under the Act of May 23, 1887, P. L. 158, sec. 5(e), to testify to any matters occurring in the lifetime of Ella Sullivan and John Sullivan tending to show an ouster of the latter by the former from his share of the farm, which would enure to Ann Arndt's benefit, the evidence is insufficient. Ann Arndt would have been a competent witness to establish her one-fourth interest in the farm, under the last clause of section 5(e) [4], if that had been disputed; but it was not. She (Ann Arndt) is not here claiming the interest vested in Ella Sullivan by devolution on the death of Cornelius Sullivan, but is seeking to establish a title to the whole in Ella Sullivan by adverse possession, to the detriment of the heirs of John Sullivan, who died in 1933, and is not here to refute her testimony. See *Reap v. Dougher,* 261 Pa. 23, 27, 103 A. 1014, 1015. It is worthy of note that Ella Sullivan, in her will, made no claim to the exclusive ownership of this farm. Her devise to the

---

[4] ...... or, unless the issue or inquiry be *devisavit vel non,* or be any other issue or inquiry respecting the property of a deceased owner, and the controversy be between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses." Act of May 23, 1887, P. L. 158, sec. 5(e), p. 160.

appellee was only of "all my property, both real and personal, wherever situate", which applies just as well to her one-fourth undivided interest as to the whole farm.

The action in trespass brought by Ella Sullivan against David Riley to No. 31 February Term, 1918, in Crawford County, was an action against a trespasser, in no way connected with or representing her co-tenants; and the averment of ownership, if any, or of possession, contained in the statement filed in that action, was not notice to her co-heirs of any claim adverse to them—just as the recital in a deed is not evidence against any one except a party claiming under the deed: *Morris v. Vanderen*, 1 Dallas 64, 67.

Any tenant in possession of real estate may bring an action against a trespasser, who has no title or right of possession to the land, and his action is for the benefit of his co-tenants, if he has any, and not to their detriment, unless they are included as parties defendant.

(3) The plaintiff was not guilty of laches. But we go further, and hold that the equitable doctrine of laches cannot be applied so as to deprive an owner of land of his estate or interest therein, derived under the intestate law of the Commonwealth, by any hostile acts, short of an open, notorious, hostile and adverse possession of the whole, maintained uninterruptedly for twenty-one years; and such adverse possession, if by a co-heir or co-tenant, does not begin to run until there is an actual ouster of the other heirs, or some clear, unequivocal act or declaration by the co-heir or co-tenant in possession, brought home to the remaining co-heirs and co-tenants, showing a claim of exclusive ownership of the whole, amounting to, or the equivalent of, an ouster of the other co-heirs and cotenants.

The plaintiff, Mrs. Hanley, had no vested interest in the land until the death of her father, John Sullivan, in 1933. If Ella Sullivan had excluded the other heirs

by a clear, unequivocal act or declaration showing an exclusive claim by her of ownership of the whole farm, brought home to John Sullivan in his lifetime, it would have continued to run against his heirs, and if maintained uninterruptedly thereafter, it would have become a good title by adverse possession when twenty-one years had passed after notice of such claim to exclusive ownership was brought home to John Sullivan. But there is no evidence in the record of any such clear, unequivocal act or declaration, amounting to a claim of exclusive ownership, brought home to John Sullivan or the other heirs of Cornelius Sullivan. Although she was not bound to do so Mrs. Hanley explained why she had taken no action against her Aunt Ella. She said, "I was satisfied to have my aunt remain on the farm." The answer was stricken out by the court, but it was a proper and reasonable explanation of why she had taken no action to enforce her rights in the eight years intervening between the death of her father in 1933 and the death of her aunt in 1941; and it should not have been stricken out, but left as an explanation of her conduct. Her aunt died on August 6, 1941 and she brought this suit on June 29, 1942.

Even if laches in bringing this suit could deprive the plaintiff of her interest in land given her by the intestate laws of the Commonwealth—which it cannot—there was no laches resulting in any appreciable detriment to the appellee.

One matter, not referred to in the court below, we cannot overlook or pass by unnoticed.

Since the Intestate Act of June 7, 1917, P. L. 429, the interest of a widow in the real estate of which her husband died the owner in fee, intestate, is not dower or a life estate. It is an absolute estate, of the same nature as that passing to his child or children, and is not conditioned on his being in actual possession of the real estate at the time of his death. If the decedent

leaves a widow and one child surviving, the widow's interest is one-half part of his real estate (sec. 1(a) ). If he leaves a widow and more than one child surviving, the widow's interest is one-third of his real estate (sec. 1(b) ).

Hence, as John Sullivan died in 1933, leaving to survive him a widow, Mary Tobin Sullivan, and four children, his widow took under the Intestate Act of 1917, one-third of his one-fourth interest in the William Hawk farm, or one-twelfth, and each of his four children took a one-twenty fourth interest, that is, one-fourth of two-thirds of one-fourth, instead of one-sixteenth.

So, too, as Dennis Sullivan died in 1937, if he left a/ widow, (Lucille Sullivan), as asserted by the appellee, and one child, Cornelius Sullivan, his widow took under the Intestate Act of 1917, one-half of his one-fourth interest in the William Hawk farm, or one-eighth, and his son, Cornelius, likewise took a one-eighth interest in said farm.

The assignment of error is sustained. The decree of the court below is reversed, and the record is remitted' to said court to find and determine the respective shares and interests by which the land in question is held, in' accordance with the views expressed in this opinion, and to enter a decree of partition accordingly (Act of July 7, 1885, P. L. 257), and take such further proceedings thereunder as may be necessary.

The costs on this appeal to be paid by the appellee, Ann Arndt. All other costs to be payable in proportion to the respective interests of the parties.