# Whigham's Appeal.

1. Partners have no separate title in any aliquot part of the partnership property.

2. A partner's interest in partnership property is an incorporeal, intangible thing, a right to an account and to his share of the balance after all the debts are paid and the equities between the partners adjusted.

3. H., T. and A. were in partnership in a portable saw-mill; A. was the general business agent and superintendent, and the mill was in his possession. H. sold his interest to W., his son, bonâ fide. No change was made in the possession of the mill; the business was carried on in the old firm name, and A. recognised the title of W. *Held*, that the rule requiring exclusive possession had no application.

4. The possession of one tenant in common is that of all.

[Whigham's Appeal.]

November 9th 1869.    Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Appeal from the decree of the Court of Common Pleas of *Allegheny county:* In Equity: No. 176, to October and November Term 1869.

To September Term 1868 of the Court of Common Pleas, Adam Forsythe filed a bill in equity against Andrew Taylor. The bill set out:—

1. On and before the 19th of March 1868, Hamilton Whigham owned a two-third interest in a portable saw-mill, and Andrew Taylor the other third, which they were running together for their joint profit.

2. The plaintiff on the 18th of August 1868, bought the interest of Whigham in the mill at sheriff's sale on judgments obtained March 19th 1868.

3. After receiving a bill of sale from the sheriff, the plaintiff proceeded to the mill to take possession and make arrangements for running it, but was met by the defendant Taylor and others in his employ, who resisted him and refused to recognise his right to the mill, or to the profits from running it.

4 and 5. The defendant Taylor continues to run and use the mill and lumber furnished to it and on hand, and refuses to account to the plaintiff for the profits or to recognise his right to the mill, and if he so continues, great and irreparable damage will be done to the plaintiff.

The prayers were that Taylor might be restrained by special injunction from using and running the mill and working up the lumber and selling any part of it, and that a receiver be appointed to take charge of the mill, &c., dispose of the same, settle the accounts, &c.: And for further relief.

Taylor answered:—

1. Admitting that on the 19th of March 1868, Hamilton Whigham owned a two-thirds interest in the mill, but that the defendant owned but one-sixth, and Robert Taylor owned the other sixth, and they were running it for their joint profit.

2. Taylor the defendant was informed that Hamilton Whigham sold his interest in the mill to his son, William Whigham, the other defendant, on the 1st of April 1868; William has been admitted by Taylor to be owner of the two-thirds.

3. Taylor admitted the sheriff's sale, but was ignorant whether any title passed to the plaintiff, but supposed that none did in consequence of the sale to William, notice of William's ownership was given at the sheriff's sale.

4 and 5. Taylor admitted that he denied and continued to deny that the plaintiff had any right to the possession of the mill. By articles of copartnership of the 18th of March 1868, Taylor was to be the general business agent and superintendent; about three

[Whigham's Appeal.]

weeks before filing the bill, he had informed the plaintiff that he would pay over none of the profit to the plaintiff, or William for Hamilton's share until the question as to who was entitled should be settled, and he desires these rights to be determined, so that he may account to the proper party as he always has been and still is willing to do; and denied there would be any danger to plaintiff by his continuing to run the mill.

He prayed the court to compel the plaintiff and William to settle their respective rights.

William Whigham was permitted by the court to interplead, and answered:—

1. Admitting the first paragraph of the bill, except averring that Andrew Taylor owned one sixth, and Robert Taylor owned one sixth.

2. He purchased Hamilton Whigham's right on the 1st of April 1868, without any knowledge of the judgments under which it is alleged to have been sold, and does not recognise any right in the plaintiff by virtue of the sheriff's sale.

2. He admitted that plaintiff was ordered from the premises because he had no right there.

4 and 5. He admitted that Taylor continued to run the mill for the owners;. denied that the plaintiff had any interest in the mill, and for that reason would not suffer irreparable damage.

He further averred that he purchased Hamilton Whigham's interest in the mill, &c., paying $1200 for it in good faith without fraud on his part or Hamilton's; that he believes Hamilton paid the money received from him towards the discharge of his indebtedness; William took possession of the mill on the 1st of April 1868, in accordance with the purchase; Taylor ran the mill from that time for the benefit of the owners, of whom he (William) was one, and since that time Hamilton had nothing further to do with it, except that he was employed to work there.

Thomas C. Lazear, Esq., was appointed master.

He reported that on the 18th of March, Hamilton Whigham purchased two-thirds interest in a portable saw-mill, for part of the purchase-money of which he gave to the vendors his judgment-notes, payable June 15, on which judgments were entered on the 19th. The remainder of the interest was in Andrew Taylor and Robert Taylor in equal sixth parts and a partnership was formed between the owners under the name of Whigham, Taylor & Co.: Andrew Taylor being appointed by the agreement of partnership "the general agent and superintendent of the business of the mill," and he has so continued. On the 1st of April 1868, William Whigham, a son of Hamilton, bought bonâ fide his father's interest in the mill, &c., for $1200, its full value, and paid the consideration.

He further reported: "No formal delivery was then, or at any ` subsequent time made by the father to the son, of the interest thus sold, (if, in fact, the nature of the property would admit

[Whigham's Appeal.]

of such a delivery); nor was there any change in the conduct of Hamilton Whigham, or in his connection with the mill, from that time until the date of the sheriff's sale, such as would indicate to the world any change of ownership, so far as his interest was concerned,"—together with other facts bearing upon the question of change of possession and control of Hamilton's interest in the mill. The sale of Hamilton's interest by the sheriff was made as alleged in the bill.

The master further reported that it was Andrew Taylor's "right, if not his duty under all the circumstances, to refuse to give the plaintiff possession thereof, or any participation in the profits, or business of the mill, until the respective rights or claims of the parties should be first settled." * * *

"The question of law arising on those facts, respecting the validity of the sale of Hamilton Whigham's interest in the mill to his son William, as against the sheriff's sale of the same interest to the plaintiff, is one which the master does not undertake to pass upon, regarding it as a question for the determination of the court."

On the 16th of September 1869, the court decreed:—

1. "That by virtue of the sheriff's sale referred to in plaintiff's bill, Adam Forsyth became the owner, and is entitled to the possession of the two-thirds interest in the mill mentioned in said bill.

2. "That plaintiff's bill be dismissed as to Andrew Taylor, upon his accounting for, and paying to plaintiff, Adam Forsyth, two-thirds of the profits of said mill, which have accrued since the date of the sheriff's sale, viz.: August 2d 1868.

3. "That the claim of William Whigham, who intervened for an interest in said mill, be dismissed, and that he pay the costs of this proceeding, in that behalf incurred."

The defendant Whigham appealed to the Supreme Court, and assigned the decree for error.

*R. G. Kirkpatrick* and *C. S. Hasbrouck*, for the appellant.— No actual fraud was found by the master. The thing sold being an interest in a partnership, no actual delivery could be made: Baker's Appeal, 9 Harris 82. The mill was in the hands of a bailee: Linton *v.* Butz, 7 Barr 89. The change of possession was such as the nature of the property allowed: Chase *v.* Ralston, 6 Casey 539. A levy cannot be made of a partner's interest in one article of partnership property: Deal *v.* Bogue, 8 Harris 233.

*Penny & Hawkins*, for appellees.—Sale without delivery is fraudulent: Milne *v.* Henry, 4 Wright 352; Barr *v.* Reitz, 3 P. F. Smith 256; Babb *v.* Clemson, 10 S. & R. 419; Dewart *v.* Clement, 12 Wright 413; Brawn *v.* Keller, 7 Id. 104.

[Whigham's Appeal.]

The opinion of the court was delivered, May 5th 1870, by

SHARSWOOD, J.—The case of the plaintiff below is surrounded with many doubts and difficulties in the most favorable aspect of it to him.   The master reported as an undisputed fact that Hamilton Whigham, Andrew Taylor, and Robert Taylor formed a copartnership, under the name and style of Whigham, Taylor & Co., for the purpose of running and carrying on the business of a portable saw-mill—Whigham owning two-thirds, and the other two each one-sixth.   The plaintiff having obtained judgment against Hamilton Whigham, issued an execution under which he levied, and sold not his interest in the partnership but his interest in the mill.   Partners have no separate title in any aliquot part of the partnership property.   Their interest is an incorporeal—intangible thing—a right to an account, and to their share of the balance after all the partnership debts are paid and all equities between the partners adjusted.   If upon an execution against one partner the sheriff should levy upon and sell his interest in a single bale of goods, it could not be maintained that his vendee would acquire his entire interest in all the assets.   As the vendee of his interest in a single chattel it is not easy to see how his purchase could be made available, unless that chattel were separately to be sold and then charged with its proportion of the firm debts to the sum produced by the sale of all the other property and the collection of the outstanding credits of the firm.   The only decree which he could be entitled to would be a general account and settlement of all the concerns and business of the firm, the conversion of the assets into money—the payment of the joint debts—and the distribution of the balance according to the rights and equities of the partners—thus stepping into the shoes of the debtor partner to the extent of the interest, and no further, that he had acquired by the sale.   No one has ever pretended that he thereby became a partner and entitled to an account of the profits merely from the time his title accrued.   These points have not been raised and discussed either in the court below or in this court, and we give no opinion upon them.   They are mentioned only to preclude any inference from silence.

Let us assume, however, that the plaintiff by his purchase of Hamilton Whigham's title became absolute tenant in common of the chattel with the other partners.   The master reports as an undisputed fact that before the date of the execution Hamilton Whigham had sold his interest to the appellant, that this sale was bonâ fide for a valuable consideration, and that there was no actual fraud.   The ground then of the decree below could only have been legal fraud—that there was no sufficient delivery of possession accompanying and following the sale.   Now this chattel was in the possession of Andrew Taylor, one of the copartners.   By the express terms of the partnership he was the general business agent

[Whigham's Appeal.]

and superintendent of the business.   He was notified of the trans-
fer to the appellant.   Whether the appellant became a partner or
not is immaterial.   The business continued to be carried on under
the old firm name.   The possession of one tenant in common is
the possession of all.   What delivery could the appellant have
required ?   The tenant in common in possession recognised his
title.   Had he commenced an action of replevin with no evidence
of an actual ouster he must have been defeated: Morris on .
Replevin, 113 ; In Field v. ————, 4 Ves. 396, in the Court of
Exchequer, Chief-Baron McDonald, after laying down the general
position " that the *corpus* of the partnership effects is joint pro-
perty ; and neither partner separately has anything in that *corpus*,
but the interest of each is only his share of what remains after
the partnership accounts are taken ;" adds " that the party coming'
in the right of the partner comes into nothing more than an
interest in the partnership, which cannot be tangible, cannot be
available or be delivered, but under an account between the part-
nership and the partner ; and it is an item in the account that
enough must be left for the partnership debts."   This passage
has been quoted with approbation by Lewis, J., in Baker's Appeal,
9 Harris 82, citing in confirmation of it Deal v. Bogue, 8 Harris
228.   If then, when the appellant gave notice to Andrew Taylor
of his purchase and obtained from him an acknowledgment and
recognition of his title, he had done everything which he could do
and had no legal remedy to enforce any other delivery ; it is clear
that he ought not to lose what he had acquired by a fair purchase,
and that the rule which requires that an exclusive possession
should be delivered to him has no application.

Decree reversed, and now it is ordered and decreed that the bill
be dismissed at the costs of the appellee.