## Medusa Portland Cement Company, Appellant, v. Lamantina.

54

Argued September 25, 1945. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*Robert L. Wallace,* with him *Wylie McCaslin,* for appellant.

*Joseph Leta, Jr.,* for appellee.

Opinion by Mr. Justice Horace Stern, October 30, 1945:

The curious fact in this case is that, a corporation having purchased a tract of land, and having made a substantial payment to the vendor at the time of the making of the contract, and having made another such payment five years later, and having paid interest on the remaining instalment still due, and having taken and, together with its successor, maintained possession until the present time (a period of 21 years), the successor corporation now claims that there are defects in the title to the coal underlying part of the tract, notwithstanding that, if there are such defects, they existed just as obviously when the original contract of sale was made and that neither the title nor the occupancy of the purchaser or its successor has ever been disputed or challenged by anyone.

On August 21, 1924, defendant by a written contract agreed to convey to Crescent Portland Cement Company, and the latter agreed to purchase, a tract of land in Beaver County of about 105 acres for the sum of

$25,500, payable $10,500 in cash upon the execution of the agreement, $7500 on August 21, 1925, at which time defendant was to deliver to the purchaser a general warranty deed for the premises in fee simple, and $7500 on August 21, 1926, the two deferred payments to bear interest. Upon the execution of the agreement the Crescent Company, having made the initial payment, immediately went into possession as it was permitted to do under the contract, drilled and tested the land for minerals, and made subleases to various tenants. On November 7, 1929, it paid the second instalment of $7500 with interest, and thereupon defendant delivered to it the deed for the property. The agreement had provided that upon receiving the deed the purchaser was to execute and deliver a bond and mortgage to secure the final instalment of $7500; instead of making such delivery the Crescent Company gave defendant a receipt which stated that the deed was being delivered in escrow and was not to be considered as delivered until defendant was given the bond and mortgage in accordance with the agreement. The bond and mortgage have never been given, but the Crescent Company has made payments of interest on the unpaid instalment of $7500.

In 1936 plaintiff, Medusa Portland Cement Company, acquired all the assets of Crescent Portland Cement Company, including the latter's rights under the agreement with defendant and the land which had been conveyed thereunder. In 1943 plaintiff sent the deed of the property back to defendant with the statement that the bond and mortgage would not be executed and that no further payments would be made on account of the purchase money because of a defective title to the land. It did not, however, surrender, or offer to surrender, its possession, but shortly thereafter it filed a petition for a declaratory decree to determine whether the title was marketable, whether the contract was binding upon it, and what its rights were in the premises because of the payments theretofore made under the contract. The

court heard testimony, filed an adjudication, and entered a decree to the effect that defendant at the time of entering into the contract had a marketable title to the land except as to the coal underlying part of the tract, but that the defects in the title had been cured by adverse possession for more than 21 years, and that, upon repossessing itself of the deed which it had returned to defendant, plaintiff would be seized of a good and marketable title in fee simple; also, that plaintiff, by going into possession, paying part of the purchase price, and accepting a deed, had forfeited the right to set up any alleged defects in the title as a defense to any action by defendant for the balance of the purchase price, being remitted to a suit on the warranties in the deed in case there was ever an actual ouster or loss due to any such defects. From that decree plaintiff appeals.

It seems that by deed dated April 19, 1865, one Hazen, who was then the owner of the land, conveyed all the mineral rights in 61 acres thereof to six grantees in various proportions. On April 2, 1866, he conveyed the tract to one Ross, excepting the coal underlying the 61 acres. The title in Ross passed to one Wiley and his wife in 1894. By various conveyances, culminating in a deed in 1911 from one McGinnis, the fractional interests in the coal became vested in Mrs. Wiley. By deed of October 28, 1920, all the land together with the underlying coal was conveyed by the Wileys to defendant. The records in Beaver County, however, are not entirely clear and complete in regard to one or possibly two fractional interests in the coal, and, for present purposes, it may be accepted as a fact that the title conveyed to the Crescent Company was not, to that extent, a good and marketable one. But it further appears that defendant went into possession in 1917, which was three years before receiving a deed for the property, and during the seven years of his occupancy he enjoyed the exclusive use of the land and not only mined the coal thereunder but for some short period made leases to others to mine and sell

it. During the ownership of the Wileys they also had taken out coal for their own use. When the Crescent Company went into possession it drilled and tested the land for minerals, made leases of the premises, collected the rentals therefrom, and paid taxes on the entire property, there being no separate assessment of the surface and the coal. The learned chancellor found as a fact that during the successive occupancies of defendant, the Crescent Company, and plaintiff, they and each of them maintained actual, constant, continued, uninterrupted, exclusive, distinct, visible, notorious and hostile possession of all the land, including the coal, and that, during all that period of 27 years, no adverse claim to any interest in the coal was ever made by anyone.

It is a familiar principle of the law of real estate that a title depending on adverse possession may constitute not only a good but a marketable title which a purchaser will be compelled to accept.[1] It is true that where there has been a severance of the title to the surface from that to the underlying minerals no enjoyment merely of the surface can ripen into a title to the underlying minerals by adverse possession.[2] Moreover, if there were in fact any outstanding titles to fractional interests in the coal underlying a part of the land, the Wileys, defendant, the Crescent Company, and plaintiff, would, during their respective ownerships, have been tenants in common with the owners of such titles, their possession would be regarded by the law as the possession of all such owners as well,[3] and, to establish title by adverse possession, it

[1] *Pratt v. Eby*, 67 Pa. 396; *Dallmeyer v. Ferguson*, 198 Pa. 288, 47 A. 962; *Westfall v. Washlagel*, 200 Pa. 181, 49 A. 941.

[2] *Caldwell v. Copeland*, 37 Pa. 427; *Armstrong v. Caldwell*, 53 Pa. 284; *Kingsley v. Hillside Coal & Iron Co.*, 144 Pa. 613, 23 A. 250; *Plummer v. Hillside Coal & Iron Co.*, 160 Pa. 483, 28 A. 853; *Algonquin Coal Co. v. Northern Coal & Iron Co.*, 162 Pa. 114, 29 A. 402; *Delaware & Hudson Canal Co. v. Hughes*, 183 Pa. 66, 38 A. 568; *Brennan v. Pine Hill Collieries Co.*, 312 Pa. 52, 167 A. 776; *Finnegan v. Stineman*, 5 Pa. Superior Ct. 124, 130, 131.

[3] *Whigham's Appeal*, 63 Pa. 194, 199; *Rohrbach v. Sanders*, 212 Pa. 636, 641, 62 A. 27, 29; *Cannon v. Jackson*, 252 Pa. 257, 262, 97 A. 468, 469.

would be necessary to prove an ouster of these others by some decisive and unequivocal act or conduct which would amount to an open denial of their rights.[4] But a sale and conveyance purporting to be of the complete title to the property by one tenant in common, and possession taken by the purchaser and held under it for 21 years, constitute such an ouster, for a sale and conveyance of that nature are in effect an assertion of claim to the entire property wholly incompatible with an admission that the other tenants in common have any rights therein: *Law v. Patterson*, 1 W. & S. 184, 191, *Earle v. Delaware, Lackawanna & Western R. R. Co.*, 270 Pa. 152, 157, 113 A. 196, 197; *Stevens v. Delaware, Lackawanna & Western R. R. Co.*, 278 Pa. 284, 291, 122 A. 504, 506; *Smith v. Kingsley*, 331 Pa. 10, 16, 200 A. 11, 14. Here, the deeds from McGinnis to the Wileys in 1911, from them to defendant in 1920, and from defendant to the Crescent Company in 1929, amounted to claims of complete ownership of the coal, and those deeds were attended by a continuing adverse possession, for, while there was not a period of 21 years of actual day-by-day mining, there were substantial operations of drilling, testing, mining and leasing from time to time during such period. The court, therefore, was justified in its conclusion that the title which defendant conveyed to the Crescent Company, even if it may originally have been defective as to the coal, has ripened by adverse possession into one that is good, marketable and wholly unassailable.

There is another reason, a conclusive one, why plaintiff's present position is untenable. In 1929 the Crescent Company, as has been stated, accepted a deed for the property. It is true that in its receipt it declared that the delivery was in escrow and was not to be considered final until it gave to defendant the bond and mortgage

---

[4] *Forward v. Deetz*, 32 Pa. 69, 73; *Hover v. Hills*, 273 Pa. 580, 117 A. 346; *Hanley v. Stewart*, 155 Pa. Superior Ct. 535, 541, 39 A. 2d 323, 326, 327.

provided for in the agreement of sale. Nevertheless the title passed under the deed. "An agreement to deliver a deed as an escrow to the person in whose favor it is made, and who is likewise a party to it, will not make the delivery conditional. If delivered under such an agreement it will be deemed an absolute delivery, and a consummation of the execution of the deed": *Simonton's Estate*, 4 Watts 180, 181. The intention in such a case is not material: *Weisenberger v. Huebner*, 264 Pa. 316, 320, 107 A. 763, 764; *Eaton v. New York Life Insurance Company*, 315 Pa. 68, 74, 172 A. 121, 123. It is obvious that the condition that the delivery should not become effective until the Crescent Company executed and delivered a bond and mortgage to defendant was solely for the latter's benefit, and it is not for the Crescent Company, or for plaintiff as its successor, to claim that it did not acquire title because of the non-fulfillment of a condition which it itself was obligated to perform. As, therefore, the deed effectively transferred the title, plaintiff is met by the well established principle of law that while the purchaser, *before* delivery of the deed, may set up that the title is unmarketable, *after* the delivery "he must show that it is positively bad, by proving a superior indisputable title to the land in a third person or party, *who is asserting his right thereto by virtue of such title;* otherwise it may be that the purchaser will never be disturbed in his enjoyment of the land by reason of it; or if he should, he may have his remedy on the covenants contained in the deed of conveyance made to him; . . . in order to make such outstanding title a good defence . . . it must be clearly shown to be indubitably good, *and that the land is actually claimed under it"*: *Ludwick v. Huntzinger*, 5 W. & S. 51, 58; *Crawford v. Murphy*, 22 Pa. 84; *Little v. Thropp*, 245 Pa. 539, 547, 91 A. 924, 927; *DeForest v. Finn*, 67 Pa. Superior Ct. 360, 362. Nobody at any time has asserted any claim to the coal or any part of it in derogation of plaintiff's title, and plaintiff is therefore foreclosed from setting up, as

a defense to its obligations under the contract of purchase, the alleged defects of title of which it is now complaining.

Decree affirmed; costs to be paid by plaintiff.