J-A32040-15

2016 PA Super 57

| | |
|---|---|
| JOSEPH A. BEZJAK AND MILDRED P. BEZJAK, HIS WIFE AND CARL F. BEZJAK, AND LARA BEZJAK, HIS WIFE<br><br>Appellants<br><br>v.<br><br>MINNIE DIAMOND, HER HEIRS AND ASSIGNS, PEARL STRONKO AND JOSEPH J. STRONKO, JR., THEIR HEIRS AND ASSIGNS, STELLA TOMASIK, HER HEIRS AND ASSIGNS, WILLIAM B. DIAMOND AND SANTINA DIAMOND, THEIR HEIRS AND ASSIGNS, RUDOLPH DIAMOND, HIS HEIRS AND ASSIGNS, EVELYN DIAMOND, ALSO KNOWN AS SISTER MARY KAREN DIAMOND, EMET DIAMOND, JR., HIS HEIRS AND ASSIGNS, LOTTIE DEL SIGNORE, HER HEIRS AND ASSIGNS, ADELE SIBA, HER HEIRS AND ASSIGNS, AND THE NILAN CONNELLSVILLE COAL AND COKE COMPANY, ITS SUCCESSORS AND ASSIGNS<br><br>Appellees | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 148 WDA 2015 |

Appeal from the Order entered December 23, 2014
In the Court of Common Pleas of Fayette County
Civil Division at No: 1909 of 2010, G.D.

BEFORE:  SHOGAN, OTT, and STABILE, JJ.

OPINION BY STABILE, J.:                    **FILED MARCH 3, 2016**

Appellants, Joseph A. Bezjak and Mildred P. Bezjak, his wife, and Carl

F. Bezjak and Lara Bezjak, his wife (collectively "Appellants"), appeal from

the December 23, 2014 order entered in the Court of Common Pleas of

Fayette County, denying their motion for summary judgment in their action to quiet title while granting the summary judgment motion filed by Appellees, Minnie Diamond, Pearl and Joseph J. Stronko, Jr., William B. and Santina Diamond, Rudolph Diamond, Evelyn Diamond also known as Sister Mary Karen Diamond, Emet Diamond, Jr., Lottie del Signore, Adele Siba, and all of their heirs and assigns (collectively "Diamond Heirs"), and the Nilan Connellsville Coal and Coke Company, its successors and assigns ("Nilan").[1] Following review, we affirm.

In its December 23, 2014 Order and Opinion, the trial court explained:

At issue is the ownership of approximately 65 acres of land situate in Springhill Township, Fayette County, Pennsylvania. In their [c]omplaint seeking to [q]uiet [t]itle in themselves, [Appellants] acknowledge that [the Diamond Heirs] have an apparent legal interest in the property as shown by the land records pertaining thereto. Complaint, Paragraph 7. However, in the next paragraph of their complaint and in their [m]otion for [s]ummary [j]udgment, [Appellants] allege they are nevertheless entitled to summary judgment as a matter of law because they have adversely possessed the property for more than 21 years because they can tack the years of their possession since 2002 onto those of their predecessor in title, Pontorero and Sons Coal Company, which owned the land since 1977.

[Appellees], in their [m]otion for [s]ummary [j]udgment, ask this [c]ourt to dismiss with prejudice all of [Appellants'] claims in the [q]uiet [t]itle action on the basis that Pontorero and Sons Coal Company filed for bankruptcy in 1983, causing title and possession of the property to be transferred to the

_____

[1] Nilan owned the property in the 1930s. Although included in the caption of the case, the company plays no role in the instant litigation beyond being a predecessor in title.

custody of the law, 11 U.S.C.A. [§] 541(a)(1), thus interrupting the alleged adverse possession of the property by [Appellants'] predecessor in title. [Appellees] also assert their co-tenancy as a second basis on which this [c]ourt should grant them summary judgment, claiming that actual notice of an intentional ouster must be given by an adverse claimant so as to establish adverse possession against a joint owner of property.

Trial Court Opinion and Order ("T.C.O."), 12/23/14, at 1-2.

A review of the chain of title sets the background for the dispute between Appellants and Appellees. In 1939, Minnie Diamond, John Harding, Jr., and Rose Ermini purchased the subject property as tenants in common, each having a one-third interest. **See** Abstract of Title, Exhibit A to Appellants' Complaint, 7/23/10, at ¶ 9. Later that year, Rose Ermini and her husband conveyed Rose Ermini's one-third interest to Minnie Diamond. **Id.** In 1942, John Harding conveyed his one-third interest to Minnie Diamond's husband, Emet Diamond, Sr. Therefore, as of 1942, Minnie Diamond and Emet Diamond, Sr., owned two-third and one-third of the property, respectively, as tenants in common. **Id.** at ¶ 10.

Minnie Diamond died intestate in 1943. Deposition of Appellee, Evelyn Diamond, also known as Sister Mary Karen Diamond, 2/27/14, at 10.[2] Upon Minnie Diamond's death, one-third of her share was transferred to her

_____

[2] As of the date of her February 27, 2014 deposition, 83-year old Evelyn Diamond, also known as Sister Mary Karen Diamond, was the sole surviving child of Minnie Diamond. In Appellees' response to Appellants' motion for summary judgment, Appellees indicate that Sister Mary Karen Diamond is deceased. Appellees' Response to Appellants' Motion for Summary Judgment, 8/25/14, at ¶ 3.

husband and the remaining two-third share was divided among her six children. Consequently, as of that time, Emet Diamond, Sr., owned a five-ninth share of the property (1/3 + [1/3 of 2/3]) and Minnie Diamond's children collectively owned a four-ninth share (2/3 of 2/3). **See** Abstract of Title, Exhibit A to Appellants' Complaint, 7/23/10, at ¶ 10.

In 1977, Emet Diamond, Sr., and his second wife, Anna Diamond, conveyed their interest in the property to Pontorero and Sons Coal Company. **Id.** at 11. In 1983, Pontorero and Sons filed for bankruptcy. **Id.** Joseph Bezjak purchased the property out of the bankruptcy in 1999 as documented in the 2002 deed from the bankruptcy trustee to Appellants. **Id.** at 11-12.[3]

Appellants acknowledge they did not engage counsel for the purchase of the property and did not secure title insurance. Deposition of Joseph Bezjak, 2/28/14, at 35. They assumed there would be no problem with the title. **Id.** However, they deny a lack of due diligence, contending the property was "rightfully and completely owned by their family for years." Appellants' Response to Appellees' Motion for Summary Judgment, 10/8/14, at ¶ 23. They further concede they had no knowledge of the Diamond Heirs' interest in the property until approximately 2010, when the instant litigation

_____

[3] Appellant Mildred Bezjak, wife of Joseph Bezjak, is the daughter of Paul Pontorero, owner of Pontorero and Sons Coal Company.

commenced. ***Id.*** at ¶ 25. They also admit they never ejected any Diamond Heirs from the property. Deposition of Joseph Bezjak, 2/28/14, at 43; Deposition of Carl Bezjak, 2/27/14, at 55-56.[4]

After the pleadings were closed, both Appellants and Appellees filed motions for summary judgment. The trial court heard oral argument on the parties' motions on October 14, 2014. On December 23, 2014, the court issued its opinion and order, denying Appellants' summary judgment motion while granting Appellees' motion and dismissing Appellants' claims with prejudice. T.C.O., 12/23/14. This timely appeal followed. Appellants filed their concise statement of issues complained of on appeal pursuant to Pa.R.A.P. 1925(b). In response to Appellants' Rule 1925(b) statement, the trial court issued a supplemental opinion. Supplemental Opinion, 2/23/15.

In this appeal, Appellants present four issues for our consideration:

1. Whether the Appellees were entitled to Summary Judgment based upon Appellants[′] failure to met (*sic*) the requisite twenty-one (21) year statutory period for Adverse Possession.

2. Whether the Appellants were, in fact, entitled to Summary Judgment based upon Adverse Possession for the property and mineral/oil and gas rights.

3. Whether the Appellants have, in fact, ousted the Appellees.

4. Whether the Appellants are entitled to the property and mineral/oil and gas rights based upon Mutual Mistake in a

---

[4] Carl Bezjak stated he never observed any of the Diamond Heirs on the property. Deposition of Carl Bezjak, 2/27/14, at 56.

> deed, the Intention of the Parties, and/or Warranty in a prior deed.

Appellants' Brief at 7.[5]

We begin by setting forth this Court's scope and standards of review.

As an *en banc* panel of this Court recently reiterated:

> When reviewing a trial court's grant of summary judgment, our standard and scope of review are as follows:

>> Our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

---

[5] The issues raised in Appellants brief were raised in their Rule 1925(b) statement and, as such, were properly preserved. However, we remind Appellants' counsel of the requirement of Pa.R.A.P. 2111(a)(11) and (d) to append a copy of the Rule 1925(b) statement to the brief filed with this Court. Further, we remind Appellants' counsel of the requirement of Pa.R.A.P. 2119(a) to divide the argument into as many parts as there are questions to be argued. While Appellants have outlined four issues for our consideration, the argument section of their brief is divided into two parts: "I. Appellees were not entitled to summary judgment," and "II. Appellants are entitled to summary judgment based upon: A. adverse possession; B. mutual mistake in deed; C. intention of the parties; and D. general warranty covenant in deed." Appellants' Brief at 11-30.

*Reinoso v. Heritage Warminster SPE, LLE*, 108 A.3d 80, 84 (Pa. Super. 2015) (*en banc*) (additional citations omitted).  With respect to the denial of summary judgment, "[w]e review the trial court's denial of summary judgment for an abuse of discretion or error of law."  *Ramsay v. Pierre*, 822 A.2d 85, 90 (Pa. Super. 2003).

Appellants' first two issues involve adverse possession.  Appellants first argue the trial court erred by granting summary judgment in favor of the Diamond Heirs based on Appellants' failure to satisfy the requisite twenty-one year period for adverse possession.  Appellants next contend the trial court erred by denying Appellants' motion based on adverse possession of the property.  This Court has recognized:

> Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law.  Accordingly, the grant of this extraordinary privilege should be based upon clear evidence. *Edmondson v. Dolinich*, 307 Pa. Super. 335, 453 A.2d 611, 614 (Pa. Super. 1982) ("It is a serious matter indeed to take away another's property.  That is why the law imposes such strict requirements of proof on one who claims title by adverse possession.")  One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years.  Each of these elements must exist; otherwise, the possession will not confer title.

*Showalter v. Pantaleo*, 9 A.3d 233, 235 (Pa. Super. 2010), *appeal denied*, 20 A.3d 489 (Pa. 2011) (quoting *Recreation Land Corp. v. Hartzfeld*, 947 A.2d 771, 774 (Pa. Super. 2008) (additional citations omitted)).

In *Showalter*, this Court decided—as a matter of first impression— that a record owner's filing of bankruptcy interrupts the continuity of

possession and defeats a claim of adverse possession. With no Pennsylvania case law on point, this Court followed the lead of the trial court and looked for guidance from a factually similar Illinois case, **General Iron Industries, Inc. v. A. Finkl and Sons Co.**, 292 Ill. App. 3d 439, 226 Ill. Dec. 652, 686 N.E.2d 1 (1997). In **General Iron**, "[t]he Illinois court held that a landowner's petition for bankruptcy protection interrupts a claimant's continuity of possession, because upon the filing of the petition in bankruptcy all of the property in the bankruptcy estate is regarded as *in custodia legis,* or in the custody of the law." **Showalter**, 9 A.3d at 236 (citing **General Iron**, 686 N.E.2d at 5) (footnote omitted).

In **Showalter**, the appellants, Showalters, purchased a home in 1979 next to a vacant lot owned by LTV Steel. Almost immediately they began to maintain the lot, which was overgrown with 5-foot high weeds. The appellants cut the weeds, tilled the lot, and trimmed the trees. Over the course of almost 30 years, they removed trees and planted others, removed part of a fence, used the lot for a kiddie pool and swing set, cut the grass, and used the lot to park their trailer.

In 1986, LTV filed a petition for bankruptcy. In 1993, the bankruptcy court approved the sale of certain LTV property, including the lot in question, to an Alabama Company. Further conveyances took place before 2008 when the appellee, Pantaleo, purchased the property. At that time, the appellants

filed suit against the appellee claiming ownership of the lot based on adverse possession.

Following a non-jury trial, the trial court entered a verdict in favor of the Showalters. However, upon consideration of the appellee's post-trial motion, the trial court reversed its decision and entered judgment in favor of the appellee.

On appeal, this Court affirmed, explaining:

We find the analysis employed in **General Iron** appropriate for the case at bar. Upon LTV's filing for bankruptcy in 1986, the subject property was part of the bankruptcy estate until it was conveyed to [an Alabama company] in 1993. As such, [a]ppellants' possession of the subject property was interrupted. [a]ppellants cannot establish that they have met the requirements for adverse possession for a continuous period of 21 years, because the subject property was part of the estate in bankruptcy for seven of those years. Therefore, the trial court committed no error of law or abuse of discretion in entering judgment in favor of [a]ppellee.

**Id.** at 236-37 (footnotes omitted).

Finding **Showalter** controlling, the trial court in the case before us determined:

The [c]ourt finds that [Appellees] are correct in their assertion that [Appellants] have failed to meet the requisite twenty-one year period necessary to establish adverse possession on account of the interruption in the possessory period by the bankruptcy of the Pontorero and Sons Coal Company. The bankruptcy filing and subsequent proceedings caused the property at issue here to be part of the estate in bankruptcy from the time of filing in 1983 until the sale of the property to [Appellants] in a federal bankruptcy sale in 2002, thus causing the fatal interruption and cessation of the possession by [Appellants'] predecessor in title.

T.C.O., 12/23/14, at 2 (citing *Showalter*). We agree. By excluding the time from 1983 until 2002 during which the property was part of the bankruptcy estate, Appellants cannot establish the requisite twenty-one years of continuous possession for adverse possession.[6] Appellants' first two issues fail for lack of merit.

Even if the Pontorero bankruptcy did not interrupt the twenty-one year period necessary for adverse possession, or even if Appellees' four-ninth share did not become part of the bankruptcy estate,[7] Appellants would not prevail in their claims because they have not demonstrated they ousted the Diamond Heirs from the property. Ouster is the subject of Appellants' third issue in which they ask whether "the Appellants have, in fact, ousted the Appellees." Appellants' Brief at 7.

_____

[6] Even using 1999, the year in which Joseph Bezjak states he entered into an agreement with the bankruptcy trustee to purchase the property, Appellants cannot satisfy the twenty-one year requirement.

Further, we note Appellants' attempt to distinguish *Showalter* on the basis that LTV, the owner of the property, declared bankruptcy whereas here Appellants' predecessor in title declared bankruptcy. We find the distinction irrelevant. It is the fact that bankruptcy interrupted the continuity of possession—not who declared bankruptcy—that controls.

[7] While Appellants argue that Emet Diamond conveyed 100% of the property to Pontorero in 1977, they argue alternatively that he conveyed only the five-ninth interest he owned. As a result, they suggest, Appellees' four-ninth share did not become part of the bankruptcy estate and, consequently, was continuously adversely possessed for more than 21 years by Appellants, tacking on the years the property was possessed by Pontorero.

In ***Conneaut Lake Park v. Klingensmith***, 66 A.2d 828 (Pa. 1949),

our Supreme Court announced:

> It is well established that one cotenant cannot claim adverse possession against another cotenant unless there is an ouster of the latter: ***Smith v. Kingley***, 331 Pa. 10, 200 A. 11 [(1938)]; ***Hover v. Hills***, 273 Pa. 580, 117 A. 346 [(1922)]. To constitute an ouster one cotenant must take sole possession and perform acts of exclusive ownership of an unequivocal nature: ***Carey v. Schaller***, 16 Pa. Super. 350 [(1901)].

*Id.* at 829.

> In ***Hover***, our Supreme Court recognized:

> [B]efore a tenant in common can rely on an ouster of his cotenants, he must claim the entire title to the land in himself, and must hold the exclusive and adverse possession against every other person, thus repudiating the relation of cotenancy, for an ouster of one tenant in common by his cotenant is not to be presumed in the absence of some open notorious act of ouster and adverse possession, and possession by a tenant in common is not adverse as to his cotenant until they are so informed, either by express notice or by acts of such an open, notorious, and hostile character as to be notice in themselves, or sufficient to put the cotenants upon inquiry which if diligently pursued will lead to actual knowledge[.]

*Id.* at 348 (quoting 38 Cyc. 25-30).

> In its Supplemental Opinion, the trial court similarly recognized:

> It is long-settled law that adverse possession by one co-tenant does not begin to run until there is actual ouster of the others or some other unequivocal act or declaration by the co-tenant in possession of the property. The notice must be actual, and show the adverse claimant's assertion of exclusive ownership of the whole of the land so as to amount to, or be the equivalent of, ouster of all other co-tenants. ***Hanley v. Stewart***, 155 Pa. Super. 535, 39 A.2d 323 (1944). Under the record of this case as it now stands, [Appellants] have failed to prove that . . . they are entitled to judgment as a matter of law in that the record does not establish that their possession of the land was such as

- 11 -

to provide the necessary unequivocal notice of ouster to their co-tenants twenty-one years prior to their commencement of the instant [a]ction to [q]uiet [t]itle.

Supplemental Opinion, 2/23/15, at 2.

The record supports the trial court's conclusions. Appellants acknowledge they were unaware of the Diamond Heirs' potential ownership interest until approximately 2008 or 2010.[8] They did not suggest that they ever provided any unequivocal notice of ouster to the Diamond Heirs at any time, and clearly could not have done so prior to 2008, the earliest they may have known of Appellees' interest. Therefore, there was no basis upon which the trial court could conclude that Appellants ousted their co-tenants or provided actual notice of ouster. Appellants' third issue does not afford them relief.[9]

---

[8] Carl Bezjak believes he may have learned of the Diamond Heirs' possible interest in the property in 2008. Deposition of Carl Bezjak, 2/27/15, at 41. Joseph Bezjak believes he learned of their possible interest in 2010. Deposition of Joseph Bezjak, 2/28/14, at 42.

[9] Appellants suggest that ouster occurred, relying on ***Medusa Portland Cement Co. v. Lamantina***, 44 A.2d 244 (Pa. 1945). In that case, our Supreme Court stated:

> [A] sale and conveyance purporting to be of the complete title to the property by one tenant in common, and possession taken by the purchaser and held under it for 21 years, constitute such an ouster, for a sale and conveyance of that nature are in effect an assertion of claim to the entire property wholly incompatible with an admission that the other tenants in common have any rights therein.

*(Footnote Continued Next Page)*

In their fourth and final issue, Appellants argue they are entitled to the property based upon mutual mistake in a deed, the intention of the parties, and/or warranty in a prior deed. Appellants' Brief at 7. While the trial court did not specifically address these issues in its opinions, we conclude they lack merit.

In their brief, Appellees assert:

> The Bezjaks' arguments based on mutual mistake, intention of the parties or general warranty covenants in relation to the 1977 Deed are all requests by the Court to reform or interpret the 1977 Deed between Emet Diamond, Sr. and Pontorero. Not only do the Bezjaks lack the facts to support such claims, but they are not a party to the 1977 Deed, and therefore lack standing to make such claims, and they are seeking relief against the Diamond Heirs, who are also not parties to the 1977 Deed, and therefore are not bound by it. These arguments are each contractual arguments, but there is no contract between the Bezjaks and the Diamond Heirs. The only contractual rights that the Bezjaks have related to this matter is between them and the Bankruptcy Estate, stemming from the 2002 Deed.[10] These claims are an attempt by the Bezjaks to have the Court rectify their failure to do the proper due diligence in obtaining a title report before purchasing the [p]roperty.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

***Id.*** at 246. We reject Appellants' assertion, finding no basis for distinguishing the bankruptcy's interruption of continuity of possession for purposes of adverse possession from its interruption of continuity of possession for purposes of claiming ouster. Further, if Appellants were unaware of Appellees' interest until 2008 or 2010, as they admit, it follows that they did not take any steps to oust their co-tenants from the property before learning of Appellees' interest.

[10] There is no suggestion in the record that the bankruptcy trustee offered the Diamond Heirs, as co-owners of the property, an opportunity to purchase the property after notice and hearing as required by 11 U.S.C.A. § 363 (b), (f), (h), and (i).

Further, this is not a matter in which the Court needs to reform the Deed. Rather, this is a question as to whether or not Emet Diamond, Sr. and his wife, Anna, had the power to transfer [p]roperty that they did not own in 1977. No reformation or finding of intention of the parties can allow Emet Diamond, Sr. and his wife, Anna, to dispose of the Diamond Heirs' interest in the [p]roperty.

Appellees' Brief at 23-24. We agree.

Additionally, we note that Appellants claim support for their reformation claims in the testimony of Mildred Bezjak. In her deposition, Mildred Bezjak testified recalling the 1977 transaction between Emet and Anna Diamond and her father, Paul Pontorero. Deposition of Mildred Bezjak, 2/27/14, at 38-41. Based on the recollection of Mildred Bezjak, Appellants claim the Diamonds' intent was to transfer 100% of the property and 100% of the mineral rights to Pontorero. Forgetting for the moment that Emet Diamond did not own 100% of the property or its mineral rights, Appellants' reliance on the testimony is unavailing. Mildred's testimony is clearly hearsay and Appellants have not claimed it falls under any exception to the hearsay rule. This Court has held that "a motion for summary judgment cannot be supported or defeated by statements that include inadmissible hearsay evidence." *Turner v. Valley Hous. Dev. Corp.*, 972 A.2d 531, 537 (Pa. Super. 2009) (quoting *Botkin v. Metropolitan Life Ins. Co.*, 907 A.2d 641, 649 (Pa. Super. 2006)) (quotation omitted).

Having reviewed the record in the light most favorable to Appellants as the non-moving party, we find no error on the part of the trial court for concluding that there were no genuine issues of material fact and that Appellees were entitled to judgment as a matter of law. Further, we find no abuse of discretion or error of law in the trial court's denial of Appellants' motion for summary judgment. Therefore, in keeping with our standards of review, there is no basis for us to reverse the entry of summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2016