J-A14032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA SAUNDERS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LINA HOLDINGS, LLC, SHERFON | : | |
| MCNAIR, AND MOUNT VERNON | : | |
| MANOR, INC. | : | No. 2813 EDA 2023 |
| | : | |
| | : | |
| APPEAL OF: LINA HOLDINGS, LLC | : | |

Appeal from the Judgment Entered January 23, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210702537

BEFORE: LAZARUS, P.J., STABILE, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED JULY 15, 2024**

Lina Holdings, LLC ("Lina") appeals from the judgment entered in favor of Patricia Saunders ("Saunders") in this action for quiet title based on adverse possession. We affirm.

In 1987, Saunders and her late husband ("decedent") purchased a home at 3402 Mantua Avenue in Philadelphia ("the Property"). *See* N.T., 5/26/23, at 7. The land adjacent to the Property consisted of seven vacant lots, much of which was covered in trash and other debris (the "side yard"). *Id*. at 6, 21. In 1989, Saunders and decedent cleaned up the side yard, removed the trash, and erected a fence around the area. *Id*. at 21-22. The fence had access gates which were kept locked in order to limit access to the side yard to Saunders and her family. *Id*. at 8, 28, 33, 41-42. Since the construction of the fence in 1989, Saunders and her family have used and maintained the

side yard as if it was their own property by engaging in the following activities: they grew flower and vegetable gardens; had multiple swimming pools; parked their cars; hosted parties, picnics and luaus; repaired the sidewalks; removed pests and vermin; mowed the lawn; trimmed bushes; removed snow; and held various events in the side yard. *Id*. at 22, 29-30, 42-43, 48-50, 66, 68-69.

In 2018, Lina purchased property located at 712 N. 34th Street ("the 712 lot"). The 712 lot is one of the seven lots included in the side yard.

In 2020, decedent commenced an action in his own name seeking to obtain title to the side yard through adverse possession. *Id*. at 60. A few months later, decedent died testate, and Saunders was appointed administratrix of his estate ("the Estate"). *Id*. at 72-73. Saunders did not learn of decedent's action until after his death. *Id*. at 52. Decedent's will did not refer to or convey his inchoate claim for adverse possession of the side yard. *Id*. at 73. The Estate later withdrew decedent's action for adverse possession before any resolution was reached in the matter. *Id*. at 9.

Thereafter, Saunders initiated the instant action for adverse possession, in her own right, averring that she had independently satisfied the requirements of adverse possession as to three of the lots included in the side

yard. Saunders named as defendants the owners of those lots: Lina; Sherfon McNair ("McNair"); and Mount Vernon Manor, Inc. ("Mount Vernon"). [1]

The matter proceeded to a bench trial in May 2023. Saunders testified to: the use of the side yard by her and her family since the fence was erected in 1989; the contents of photographs which depicted the fence surrounding the side yard and numerous events being held in the side yard; the involvement of the entire family in maintaining, using, and enjoying the side yard; the fact that the fence surrounding the side yard had locked access gates; the family's practice of parking cars and a large truck on the side yard; the Saunders' maintenance of the lawn by mowing it twice a month; the installation of lights and cameras for security of the side yard; her belief the she and decedent owned the side yard; and the fact that she never received notice from anyone claiming to own any part of the side yard. *Id*. at 20-56.

On May 30, 2023, at the conclusion of trial, the court found in favor of Saunders and entered judgment.[2] Lina filed a post-trial motion, which the trial court denied. Lina filed a timely notice of appeal and Lina and the trial court both complied with Pa.R.A.P. 1925.

_____

[1] Saunders' claim against McNair was dismissed without prejudice. By agreement, the trial court entered judgment in favor of Saunders against Mount Vernon, and granted her title by adverse possession to the portion of the side yard previously owned by Mount Vernon.

[2] The trial court impermissibly announced the verdict and simultaneously entered judgment without allowing for the required period of ten days to file post-trial motions. *See* Pa.R.Civ.P. 227.1(C). After Lina filed a notice of appeal, this Court quashed the appeal, and remanded for the trial court to allow ten days for Lina to file post-trial motions.

Lina raises the following issues for our review:

1. Whether the trial court committed an error of law by determining that [Saunders] adversely possessed the disputed property when [decedent] previously filed his own complaint for adverse possession claiming that he alone had exclusive and hostile possession to the same property and the evidence is insufficient to establish [Saunders'] exclusive and hostile possession of the same property?

2. Whether the trial court erred as a matter of law by holding that [Saunders'] late husband's adverse possession claim "died" with him and [his] adverse possession claim belonged to his Estate and not [Saunders]?

3. Whether the trial court erred as a matter of law in holding [Saunders] possessed the property continuously and uninterrupted for twenty-one years when there is a lack of privity between [Saunders] and [decedent] who possessed the property before her?

4. Whether the trial court erred as a matter of law when it held that [Lina] was not entitled to a new trial because the trial court erred in holding that [decedent's] claim for adverse possession had no relevance to [Saunders'] claim?

Lina's Brief at 10-11 (unnecessary capitalization omitted).

Our standard of review of a decision entered in a non-jury case is

as follows:

[We are] limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

- 4 -

*Hart v. Arnold*, 884 A.2d 316, 330-31 (Pa. Super. 2005) (citations omitted). The court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence. *See id*.

Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law. *See Bezjak v. Diamond*, 135 A.3d 623, 627 (Pa. Super. 2016). One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for a statutorily required period of twenty-one years. *See Shaffer v. O'Toole*, 964 A.2d 420, 423 (Pa. Super. 2009); *see also* 68 P.S. § 81 (providing that twenty-one years is the timeframe for which to acquire title by adverse possession). Each of these elements must exist; otherwise, the possession will not confer title. *See Shaffer*, 964 A.2d at 423. The burden of proving adverse possession rests upon the claimant to establish by credible, clear, and definitive proof. *See Johnson v. Tele-Media Co. of McKean County*, 90 A.3d 736, 741 (Pa. Super. 2014).

Lina does not dispute that the Saunders family adversely occupied the side yard through actual, continuous, exclusive, visible, notorious, distinct, and hostile possession for a period of twenty-one years. Nor can it, as the use of a piece of land for lawn purposes in connection with a residence,

- 5 -

together with continued maintenance of such lawn, is sufficient to establish adverse possession. **See Reed v. Wolyniec**, 471 A.2d 80, 84 (Pa. Super. 1983).

Instead, Lina's argument is premised on its assertion that decedent, alone, adversely possessed the side yard, and that Saunders, therefore, has no independent claim for adverse possession of the side yard. In this regard, the possession required to establish adverse possession need not be absolutely exclusive. **See id**. When, at all times, a husband and wife jointly occupy the property subject to adverse possession, they are regarded as co-tenants. **See Conneaut Lake Park v. Klingensmith**, 66 A.2d 828, 829 (Pa. 1949).

However, one co-tenant cannot claim adverse possession against another co-tenant unless there is an ouster of the latter. **Id**. To constitute an ouster, one co-tenant must take **sole** possession and perform acts of **exclusive** ownership of an **unequivocal** nature. **Id**. Moreover:

> [B]efore a tenant in common can rely on an ouster of his co[-]tenants, he must claim the entire title to the land in himself, and must hold the exclusive and adverse possession against every other person, thus repudiating the relation of co[-]tenancy, for an ouster of one tenant in common by his co[-]tenant is not to be presumed in the absence of some open notorious act of ouster and adverse possession, and **possession by a tenant in common is not adverse as to his co[-]tenant until they are so informed, either by express notice or by acts of such an open, notorious, and hostile character as to be notice in themselves**, or sufficient to put the cotenants upon inquiry which if diligently pursued will lead to actual knowledge[.]

**Hover v. Hills**, 117 A. 346, 348 (Pa. 1922) (emphasis added).

In their first issue, Lina argues that decedent, alone, adversely possessed the side yard. Lina points to Saunders' deposition testimony that decedent erected the fence, mowed the lawn, and maintained the side yard, and that she did not undertake these responsibilities until after his death. Based on such testimony, Lina asserts that Saunders cannot establish that she, herself, adversely occupied the side yard through actual, continuous, exclusive, visible, notorious, distinct, and hostile possession for a period of twenty-one years. Instead, Lina contends, Saunders can only show that she began to occupy the side yard following decedent's death in 2020, which is an insufficient period of time to meet the twenty-one years of continuous occupation necessary to establish adverse possession.

Lina additionally argues that decedent's action for adverse possession establishes that Saunders has no independent claim for adverse possession of the side yard. In support, Lina points to decedent's complaint, and notes that decedent's claim did not mention Saunders or reference her as a co-tenant or joint adverse possessor. Lina argues that because Saunders' adverse possession claim is nearly identical to decedent's prior claim, Saunders' adverse possession claim is in competition with decedent's claim. Lina posits that, if decedent had succeeded in his adverse possession claim, he would have been the sole owner of the side yard to the exclusion of Saunders. Lina claims that the trial court's finding of adverse possession for Saunders is an implicit finding that decedent's claim was also valid, and that both claims

cannot be valid because that would make decedent the owner of the side yard to the exclusion of Saunders. Lina asserts that, because Saunders did not disavow decedent's competing claim on the record, she cannot show possession exclusive to that of decedent.

The trial court considered Lina's first issue and determined that it lacked merit because Saunders occupied the side yard through actual, continuous, exclusive, visible, notorious, distinct, and hostile possession for a period of twenty-one years. The trial court reasoned:

> Because [decedent's] claim for adverse possession does not mention [Saunders] as a joint adverse possessor, [Lina] claims that [Saunders] lacks the elements required to meet her burden. This argument is [meritless] because the [side yard] was used and shared in marriage by [Saunders] and [decedent] . . .. [Saunders] provides ample evidence to show her possession of the [side yard] and that she concurrently used the [side yard] in a way consistent with her adverse possession for [] more than twenty-one years. The fact that [Saunders] continuously occupied the [side yard] with [decedent] does not automatically mean she was unable to adversely possess the land.
>
> * * * *
>
> [Saunders] has demonstrated actual possession. [Saunders] possessed the [side yard] by using it as a side, residential yard. [Saunders] possessed the [side yard] by erecting a fence around it in 198[9], which is still maintained. Since then, [Saunders] continued to possess the land by using the land characteristically, as a typical owner of a side yard would. [Saunders] maintained the lawn by having people cut the grass for her on a regular basis, demonstrating actual possession for over twenty-one years. Also, [Saunders] hosted family gatherings, held recreational activities, parked vehicles, walked dogs, removed snow, and gardened on the side yard over this period as well as other activities.
>
> * * * *

- 8 -

[Saunders] has demonstrated exclusive possession. [Saunders] took possession of the vacant land, exercising control characterized as a side yard. [Saunders] concurrently used the land along with [decedent], sharing activities including maintenance of the lawn, family gatherings, recreational activities, and others. [Saunders] and [decedent] put a fence around the land, as a real owner of a yard would. They used and exercised dominion over the land consistent with ownership of a side yard and generally excluded others by way of a fence and lawn maintenance. The fact that more than one person used the [side yard], does not mean that it was not exclusive.

* * * *

[Saunders] has demonstrated possession hostile to the record title holder. . . . At a minimum, [Saunders'] possession became hostile when the fence around the side yard was erected in 198[9], manifesting her intent to hold the land for herself for over twenty-one years.

Trial Court Opinion, 12/15/23, at 6, 7, 9-10 (citations omitted).

Viewing the evidence presented in the light most favorable to Saunders, we discern no abuse of discretion or error of law by the trial court in reaching its determination that Saunders occupied the side yard through actual, continuous, exclusive, visible, notorious, distinct, and hostile possession for a period of twenty-one years. The record amply demonstrates that Saunders and decedent exercised joint possession of the side yard for over thirty years by acting as its owners, enclosing it with a locked fence, maintaining a lawn and gardens on it, parking their vehicles on it, and hosting many events on it. That decedent was Saunders' co-tenant with respect to their joint occupation of the side yard, does not alter this conclusion. Nor does the fact that, as a married couple, they agreed that decedent would undertake certain

- 9 -

responsibilities in relation to their joint occupation of the side yard, including erecting the fence and maintaining the lawn.

Similarly, the fact that decedent initiated a separate action for adverse possession shortly before he died does not diminish Saunders' claim. As explained above, where co-tenants jointly occupy property through adverse possession, one co-tenant cannot claim adverse possession against another co-tenant unless there is an ouster of the latter. **See Conneaut Lake Park**, 66 A.2d at 829. To constitute an ouster, one co-tenant must take **sole** possession and perform acts of **exclusive** ownership of an **unequivocal** nature. **Id**. Lina has failed to point this Court to any evidence that an ouster occurred whereby decedent took **sole** and **exclusive** possession of the side yard and excluded Saunders from any use of the area. **See Hover**, 117 A. at 348 (explaining that before a tenant in common can rely on an ouster of his co-tenant, he must claim the entire title to the land in himself, and "must hold the exclusive and adverse possession **against every other person**" (emphasis added)). Indeed, Lina concedes that Saunders used the side yard with decedent's "knowledge and blessing." Lina's Brief at 32.

Moreover, possession by a tenant in common is not adverse as to his co-tenant until the co-tenant receives express notice of the ouster. **See Hover**, 117 A. at 348. On the record before us, there is no evidence that decedent placed Saunders on notice that he intended to oust her from the side yard. By the time that decedent filed an action for adverse possession in 2020, they had jointly occupied the side yard for more than twenty-one years.

- 10 -

Notably, decedent did not name Saunders in his complaint, nor is there any indication that he notified her of his lawsuit. Indeed, Saunders testified that she was unaware of his action for adverse possession until after he died. **See** N.T., 5/26/23, at 52. Accordingly, Lina's first issue lacks merit.

In Lina's second issue, it claims that the trial court erred as a matter of law by holding that decedent's inchoate adverse possession claim died with him. When calculating the period of adverse possession, the possession by one owner may not meet the requisite twenty-one years. Under certain circumstances, the periods of possession of prior owners may be added on to the period of possession of the present owners by a process, called "tacking," but only where there is privity between successive occupants. **See Baylor v. Soska**, 658 A.2d 743, 744-45 (Pa. 1995). "Privity" refers to a succession of relationship to the same thing, whether created by deed or other acts or by operation of law. **Id**. If the adverse possessor's claim is to be passed on to a successor in title, there must be some objective indicia of record by which it can be discerned with some degree of certainty that a claim of title by adverse possession is being made and that the duration of this claim has been passed on to a successor in title. **Id**. at 746 (explaining that the only method by which an adverse possessor may convey the title asserted by adverse possession is to describe in the instrument of conveyance by means minimally acceptable for conveyancing of realty that which is intended to be conveyed).

Lina contends that decedent died intestate. On this basis, it argues that, without a will to convey his claim for adverse possession directly to Saunders,

the claim merely passed to the Estate. Lina argues that the fact that decedent died intestate "destroys" Saunder's adverse possession claim. Lina's Brief at 36.

The trial court considered Lina's second issue and determined that it lacked merit. The court reasoned:

> . . . [A]n action based on an inchoate claim of adverse possession must be transferred via an instrument of conveyance, when the plaintiff seeking ownership relies on grantor's period of possession to satisfy the continuity requirement. The conveyance must contain a reference to the disputed tract or to the grantor's inchoate right. However, this argument is [meritless] because [Saunders] does not rely on [decedent's] inchoate claim of adverse possession, but rather satisfies all the elements on her own personal experience.

Trial Court Opinion, 12/15/23, at 12 (citations, quotation marks, and unnecessary capitalization omitted).

Based on our review, we discern no abuse of discretion or error of law by the trial court in reaching its determination that the absence of a conveyance in decedent's will did not affect Saunders' claim for adverse possession. Initially, we note that the record reflects that decedent died testate and named Saunders as the administratrix of the Estate. *See* N.T., 5/26/23, at 72-73. Nevertheless, Saunders brought her own claim for adverse possession of the side yard based on her joint occupation of the side yard with decedent **for more than twenty-one years**. Thus, as Saunders's claim for adverse possession was not derivative to decedent's claim for adverse

possession, no express conveyance of decedent's claim to Saunders was necessary or required. Accordingly, Lina's second issue lacks merit.

In Lina's third issue, it claims that Saunders did not possess the side yard for the statutorily required twenty-one year period. Lina further claims that Saunders cannot demonstrate continuous possession for the twenty-one year statutory period through tacking because there is no privity between her and decedent. Lina argues that because decedent did not transfer his adverse possession claim through an instrument of conveyance, there is no privity between Saunders and decedent's claim. Further, Lina asserts that because Saunders and decedent did not make an adverse possession claim jointly, their claims were in opposition to one another, both claiming the side yard individually. Additionally, Lina renews its claim that, because decedent was generally in charge of maintenance of the side yard and it was not until after his death that Saunders assumed such maintenance, she cannot satisfy the twenty-one year period of possession.

The trial court considered Lina's third issue and determined that it lacked merit. The court reiterated that, because Saunders' claim satisfies all of the elements of adverse possession, privity and tacking are not at issue and are, hence, irrelevant. *See* Trial Court Opinion, 12/15/23, at 11, 13.

Based on our review, we discern no error or abuse of discretion by the trial court in reaching its determination that, because Saunders' claim satisfied all of the elements of adverse possession, she was not required to show privity or tacking. Saunders jointly possessed the side yard in an actual, continuous,

exclusive, visible, notorious, distinct, and hostile manner since 1989, far surpassing the statutorily required twenty-one years. Thus, having exceeded the statutory period, Saunders's claim was neither derivative nor dependent on a prior owner's claim. Accordingly, Lina's third issue lacks merit.

In Lina's fourth issue, it repeats the various arguments stated above, albeit under a claim that the trial court erred in holding that Lina was not entitled to a new trial. We will not disturb a trial court's denial of a motion for a new trial "absent a gross abuse of discretion or error of law by the trial court." *Jacobs v. Chatwani*, 922 A.2d 950, 966 (Pa. Super. 2007).

Once again, Lina argues that Saunders' claim is improper due to the validity of decedent's claim. Lina insists that, because decedent achieved adverse possession of the side yard, Saunders was required to disavow his claim in order for her claim to go forward. Lina argues that decedent's claim should have passed to the Estate. Lina repeats its argument that the trial court erred in holding that decedent's claim died with him and asserts that the ruling foreclosed Lina from presenting further argument for its position.

The trial court declined to address this issue on the basis that it was addressed through its rulings on prior issues. *See* Trial Court Opinion, 12/15/23, at 13.

Based on our review, we conclude that Lina's final issue raised no new claim or assertion that has not already been considered and addressed by this Court. Moreover, in relation thereto, we discern no gross abuse of discretion or error of law by the trial court. Rather, the record reflects that, in fact, the

- 14 -

trial court gave Lina ample opportunity to present evidence and argument and did not foreclose it, as Lina claims. The trial court heard Lina's oral arguments both at trial and on the post-trial motions. On both occasions, the trial court asked Lina if it had anything more to argue, and Lina responded in the negative. *See* N.T., 5/30/23, at 7; N.T., 10/23/23, at 8. Accordingly, Lina's fourth issue merits no relief.

Judgment affirmed.

President Judge Lazarus joins the memorandum.

Judge Stabile concurs in result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2024